765 P.2d 518

**STATE of Arizona, Appellee,**

v.

**George Harry RANKOVICH, Appellant.**

**No. 6721 (CR–85–0295–AP).**

Supreme Court of Arizona,
En Banc.

Oct. 4, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Janet Keating, Asst. Attys. Gen., Phoenix, for appellee.

Law Offices of O. Joseph Chornenky by O. Joseph Chornenky, Phoenix, for appellant.

GORDON, Chief Justice.

A jury convicted appellant, George Harry Rankovich, of one count of first-degree murder. In view of the stipulation by the State prior to trial that the death penalty was not appropriate, the trial court sentenced Rankovich to life imprisonment without the possibility of release for 25 years, pursuant to A.R.S. § 13–703. Rankovich challenges his conviction on the following grounds:

(1) The trial court erred in not excluding evidence regarding appellant's race, religion, and national origin;

(2) The prosecutor's misconduct warrants the granting of a new trial;

(3) The trial court erred in refusing to give a jury instruction regarding intoxication; and

(4) Appellant was denied effective assistance of counsel.

We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4033, and –4035.

### FACTS

During the evening hours of May 12, 1985, the victim, Bruce Walter, and a friend bought a pitcher of beer at the Crazy

Horse Lounge in Mesa, Arizona. While Walter was away, his friend drank the beer and then left the bar. When he realized that his friend had left, Walter struck up a conversation with the bartender.

At approximately the same time, George Harry Rankovich was asked to leave the Big Brown Jug a half a block from the Crazy Horse Lounge. Rankovich had asked the owner of the Big Brown Jug for a drink, but the owner refused because Rankovich was intoxicated. The owner did, however, honor Rankovich's request for a glass of water. When Rankovich spilled the water, though, the owner asked him to leave the bar.

After leaving the Big Brown Jug, Rankovich drove to the Crazy Horse Lounge. Rankovich asked the bartender for a drink, but the bartender refused because she believed that Rankovich was intoxicated. Rankovich next asked for a glass of water, but the bartender also refused this request. The bartender then walked to a phone to call for the police. When Rankovich realized that the bartender was calling the police, he drew a pistol and pointed it at the bartender stating that he would kill her if she called the police. Remaining on the phone, the bartender moved behind a wall to shield herself from Rankovich. While on the phone with police, the bartender heard wrestling and chairs falling, and, eventually, three shots being fired.

In another part of the bar, Andrew Skogman and Mike Milusnik were playing pool. They also heard fighting in the front of the bar and went to investigate. They saw Walter and Rankovich on the floor, with Walter repeatedly punching Rankovich in the face. Skogman tapped Walter on the back and told him to either break the fight up or take it outside. The combatants then stopped fighting, and Skogman helped both Walter and Rankovich to their feet.

Milusnik noticed that Walter's nose was broken badly and asked what happened.[1] Walter said Rankovich had broken his nose with a gun. Milusnik replied, "[g]un, what gun." Rankovich then pulled a gun from behind his right hip and, with a smirk on his face, shot at Walter three times. Skogman testified that there was a discernible pause between the first shot and the second and third shots. The medical examiner testified that Walter died from gunshot wounds to his back.

A patron who had left the bar when Rankovich pointed his pistol at the bartender saw Rankovich run out of the bar, get into a van, and drive away. The patron noted Rankovich's license plate, and he gave the number to police when they arrived on the scene.

Mesa Police Officer Allen Robert Moore spotted and followed the van until it stopped at a residence. After a time, Rankovich got out of the van and entered the house. After securing the area outside the house, Mesa police officers called Rankovich and asked him to come outside. Approximately 15 minutes later, Rankovich emerged from the residence and was taken into custody.

A short time after Rankovich was taken into custody and transported to the Mesa police station, officers secured a search warrant for Rankovich's residence and van. Officers seized a Smith & Wesson revolver from the van, which matched a holster Rankovich lost during the struggle at the Crazy Horse Lounge. In the cylinder of the revolver, police found three live bullets and three spent casings.

After advising Rankovich of his *Miranda* rights, Mesa detectives asked Rankovich if he would answer their questions. Rankovich agreed to answer questions. During the course of the interview, Rankovich told detectives that he was a Russian Jew and that he had seen an enemy that night from the Old Country. He indicated, however, that he was afraid that he shot the wrong man. Rankovich also explained that he was talking to the owner of the bar when someone pushed him off his bar stool. Rankovich claimed that he fired the gun in self-defense while he was still lying on the floor.

---

1. Between Walter's eyebrows there was a tear one inch in its greatest diameter. The medical examiner testified that such a tear was consistent with being hit with a gun.

During trial, Rankovich again justified his actions by claiming self-defense. Nevertheless, the jury found Rankovich guilty of first-degree murder. The trial court sentenced Rankovich to life imprisonment. This appeal followed.

DID THE TRIAL COURT ERR IN PERMITTING STATEMENTS TO BE MADE CONCERNING RANKOVICH'S RACE, RELIGION, AND NATIONAL ORIGIN?

Rankovich argues that the trial court erred in permitting the prosecutor to make remarks reasonably calculated to evoke or appeal to racial, national, or religious prejudice in the jury. Rankovich complains of three specific incidents. First, the jury heard testimony concerning a nickname given to Rankovich. Second, the jury heard testimony concerning statements Rankovich made regarding East Germany, Russia, and the United States. Finally, the jury heard testimony relating to Rankovich's ethnic and religious background. We address each of these incidents separately.

### A. Rankovich's Nickname

■ During the testimony of the owner of the Big Brown Jug, James D. Harrison, the following exchange occurred:

Q. [By defense counsel] Does Mr. Rankovich have an accent?

A. [By Mr. Harrison] Yes, ma'am, or if he didn't, he sure put on a good act.

Q. What type of accent does he have?

A. Well, we had a nickname for George. The nickname that they use around the bar—I guess I put the name on him, George the Russian.

Rankovich now asserts that this exchange was designed to appeal to the prejudices of the jury. We note, however, that the above quoted colloquy took place during cross-examination by Rankovich's trial counsel. When a defendant, rather than the State, introduces evidence of his national origin, there is simply no reversible error. *Cf. United States v. McCall*, 291 F.2d 859, 860 (2nd Cir.1961) (finding that although the "interjection of the issue of

[religious] prejudice into the trial [by defendant's letter] was unfortunate," it was not reversible error).

### B. Statements Relating to East Germany, Russia, and the United States

During both his arrest and his post-*Miranda* interview with Mesa Police detectives, Rankovich made statements indicating a fondness for Eastern Bloc nations and a dislike for the United States. The State elicited this evidence from Mesa Police officers. During the direct examination of Officer Moore, the following exchange occurred:

Q. [By the State] When Mr. Rankovich came out of the residence, did he say anything?

A. He was mumbling. It was hard to understand him. He was slurring his speech but he was saying things like, you should be glad you're not in Russia. You are taking my freedom away.

MR. MESH: Excuse me, Your Honor. I have to object absent the foundation from this officer concerning any statements.

THE COURT: Sustained.

After establishing that Officer Moore was in a position to hear Rankovich's statements during his arrest, the State once again asked what Rankovich had said. Rankovich objected, this time on the grounds of relevance. The court overruled the objection, and Officer Moore testified that Rankovich said, "You should be glad you're not in Russia. You are taking my freedom away." During the direct examination of Officer Wayne Paul Baker, the following transpired:

Q. [By the State] So—okay, so what did Mr. Rankovich do then?

A. At this point Mr. Rankovich became somewhat agitated. He said he was unhappy with Americans in our country and again requested to be placed on an airplane and returned to East Germany.

MR. MESH: For the record, at this time I would object to that statement and

ask that it be stricken from the record. It is not probative of anything.

THE COURT: The objection is overruled.

THE WITNESS: Mr. Rankovich described to us—himself as a quote "gun nut" and said that he likes firearms of all types and that he often carries firearms to protect himself.

I asked Mr. Rankovich about his request to be sent back to East Germany, possibly back to Russia and asked him how he felt about the fact that if he were sent back he wouldn't be able to carry his firearms, and Mr. Rankovich replied that "I'm going back to Russia. I tell them I hate all Americans and that they say hey, this guy is all right. He hates all Americans." He then shrugged his shoulder and said, "They give me a machine gun...."

Rankovich asserts that the above quoted exchanges demonstrate that the prosecuting attorney elicited statements calculated to evoke ethnic prejudice against Rankovich, and that these statements actually prejudiced the jury and deprived Rankovich of his right to a fair and impartial trial.

■ It is generally improper to elicit evidence concerning one's ethnicity. *See generally* Annotation, *Counsel's Appeal In Criminal Case to Racial, National, or Religious Prejudice as Ground for Mistrial, New Trial, or Reversal*, 45 A.L.R.2d 303 (1956); *State v. Filipov*, 118 Ariz. 319, 576 P.2d 507 (App.1978). Such evidence is rarely relevant and can inflame the passions of the jurors. *See also* Rule 610, Ariz.R.Evid., 17A A.R.S. The State contends, however, that the evidence in this instance was relevant to show that Rankovich was an angry, violent man, and that he was not motivated by self-defense. The State also believes this evidence helps establish Rankovich's state of mind on the night of the killing.

■ We believe that under the State's argument, these statements should be considered character evidence, which should be analyzed under Rule 404(a) of the Arizona Rules of Evidence. 17A A.R.S. (1988). Under Rule 404(a) evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. *Bell v. State*, 143 Ariz. 305, 693 P.2d 960 (App.1984). The State's position—that Rankovich's statements were admissible to show that he was basically an angry man and that he shot the victim, not in self-defense, but because he was angry—is contrary to both the spirit and plain meaning of Rule 404(a). The State may not introduce evidence of a person's violent nature in order to establish that he committed a violent crime. *Bell*, 143 Ariz. at 309, 693 P.2d at 964. The trial court erred in allowing this evidence over objection.

■ Nonetheless, because we believe that this error was harmless beyond a reasonable doubt, we will not reverse Rankovich's conviction due to the admission of statements concerning his affinity for Russia and East Germany and his general dislike for the United States. In Arizona, error is not reversible if substantial evidence in the record supports the verdict and it can be said beyond a reasonable doubt that the error did not contribute significantly to the verdict. *See State v. Henley*, 141 Ariz. 465, 687 P.2d 1220 (1984).

In the instant case, the evidence of Rankovich's guilt is overwhelming. Two eyewitnesses testified that Rankovich and the victim had ceased fighting and regained their feet prior to the shooting. One witness testified that Rankovich smirked noticeably before he drew his pistol and shot the victim. Additionally, the jury heard testimony that Rankovich paused discernibly between the first shot and second and third shots. Finally, the medical examiner testified that Rankovich shot from a standing position and that the victim had been shot in the back. In light of this overwhelming evidence of both the shooting and the circumstances in which it occurred, we find, beyond a reasonable doubt, that the error did not contribute significantly to the verdict, and is thus harmless.

### C. Rankovich's Ethnic and Religious Backgrounds

■ The following dialogue took place between Rankovich and the prosecutor:

Q. Mr. Rankovich, what country do you come from?

A. I am from Serbia and this is my original—

Q. Serbia?

A. Yeah.

Q. Not Russia?

A. No.

Q. So you are not a Russian Jew?

A. Yes, I am.

Q. So that you are a Russian Jew?

A. That's correct.

Q. Have you ever been in Russia?

A. No, I have not.

Q. So when you said you were a Russian Jew, that was a lie?

A. No. It is not a lie. My father is from Russia. He is a Jew and my mother is from East Germany.

Rankovich argues that this cross-examination was calculated to appeal to ethnic and religious prejudices of the jury.

 Rankovich did not, however, object to the above quoted exchange during trial. He has thus waived his right to assert the matter on appeal, absent fundamental error. *State v. De Nistor*, 143 Ariz. 407, 414, 694 P.2d 237, 244 (1985). Error is fundamental only where it goes to the foundation of a case or it is of such dimension that it cannot be said that it is possible for the defendant to have received a fair trial. *State v. Corrales*, 138 Ariz. 583, 594, 676 P.2d 615, 626 (1983). In view of the overwhelming evidence supporting Rankovich's conviction, we do not believe that the error here, if any, went either to the foundation of the case or was of such a dimension that it deprived Rankovich of a fair trial. Accordingly, Rankovich has waived his right to complain about the scope of the cross-examination on appeal.

## DOES THE PROSECUTOR'S MISCONDUCT WARRANT THE GRANTING OF A NEW TRIAL?

 Rankovich complains that the prosecutor was guilty of misconduct because he

introduced evidence of Rankovich's religion, ethnic background, and national origin. In essence, Rankovich raised this same argument in his motion for a new trial.[2] Accordingly, we treat this appeal as an application for review of the trial court's denial of Rankovich's motion for a new trial.

 Motions for new trial are disfavored and should be granted with great caution. *State v. Chaney*, 141 Ariz. 295, 311, 686 P.2d 1265, 1281 (1984). Moreover, deciding whether a defendant is entitled to a new trial is within the sound discretion of the trial court. *Id.* Absent an abuse of discretion, this Court will not disturb the denial of a new trial motion. *Id.; State v. Hansen*, 156 Ariz. 291, 295, 751 P.2d 951, 955 (1988).

The trial court specifically found that the admission of evidence concerning Rankovich's religion, ethnic background, and national origin was not prejudicial. Accordingly, it denied Rankovich's motion for a new trial. Upon reviewing the record, we find no abuse of discretion and thus, we will not disturb the trial court's ruling.

## DID THE TRIAL COURT ERR IN REFUSING TO INSTRUCT THE JURY REGARDING INTOXICATION?

On the last day of trial, Rankovich submitted his requested jury instructions to the trial court. The trial court refused to give an instruction that would have informed the jury as to the legal effect of intoxication. Rankovich appeals from this ruling, arguing that, because premeditation is an element of first-degree murder, he was entitled to have the jury consider whether he was so intoxicated as to be incapable of premeditation. We disagree.

 In Arizona, the elements of first-degree murder are intentionally or knowingly causing the death of another person with premeditation, or causing the death of

---

**2.** Rankovich also asserts that the prosecutor wrongfully expressed his opinion of guilt and credibility of witnesses. However, Rankovich fails to argue the issue or to provide any specific

instances of misconduct. Accordingly, he has waived this issue on appeal. *State v. Nirschel*, 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987).

another person in the course of the perpetration of a specified felony. A.R.S. § 13–1105. In order to show premeditation, the State must prove that a defendant acted with either the intent *or the knowledge* that he would kill his victim and that such intent *or knowledge* preceded the killing by a length of time permitting reflection. A.R.S. § 13–1101(1); *State v. Neal,* 143 Ariz. 93, 98, 692 P.2d 272, 277 (1984).

█ Although voluntary intoxication is not a defense to crime, our legislature permits juries to consider the fact that a defendant was intoxicated at the time of the criminal act, when determining the defendant's culpable mental state. However, the legislature allows such consideration only "when the actual existence of the culpable mental state of intentionally or with the intent to is a necessary element to constitute any particular species or degree of offense...." A.R.S. § 13–503.

█ Rankovich · was charged with *knowingly* committing first-degree murder. If an accused is charged with knowingly committing first-degree murder, the accused is not entitled to a voluntary intoxication instruction. *State v. Reffitt,* 145 Ariz. 452, 464, 702 P.2d 681, 693 (1985). The intoxication statute only contemplates that defendants charged with intentional crimes will be able to raise intoxication defenses. *State v. Ramos,* 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982) (evidence of intoxication allowed to negate the mental state of "intentionally," but not the mental state of "knowingly"). The fact that first-degree murder requires a finding of premeditation has no bearing on this result. Under A.R.S. § 13–1101(1), a defendant premeditates his crime if he either *intends or knows* that his acts will kill another human being, and his *intention or knowledge* precedes the killing by a length of time to permit reflection. If a defendant is charged with knowingly committing first-

degree murder, the jury is not permitted to consider the "mental state of intentionally." The jury may only consider whether the defendant knowingly caused the death of another and whether that knowledge preceded the killing by a length of time to permit reflection. Because the "mental state of ˙intentionally" was not in issue, Rankovich was not entitled to a voluntary intoxication instruction under A.R.S. § 13–503.

## WAS RANKOVICH DENIED EFFECTIVE ASSISTANCE OF COUNSEL?

█ Rankovich complains that he was denied his constitutional right to effective assistance of counsel. Specifically, Rankovich asserts that his trial counsel was ineffective because counsel filed an inadequate motion in limine to preclude testimony regarding Rankovich's race, religion, and national origin. Additionally, Rankovich maintains that his counsel did not adequately object when this testimony was introduced.[3]

█ To prevail on his ineffective assistance of counsel claim, Rankovich must establish that (1) his counsel's actions fell below the objective standards of representation measured by prevailing professional norms; and (2) his counsel's deficient performance was prejudicial. *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). In deciding an ineffectiveness claim, we need not approach the inquiry in a specific order or address both prongs if the defendant makes an insufficient showing on one. *State v. Salazar,* 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985). Because we believe that consideration of the second prong of the inquiry is dispositive of Rankovich's claim, this court neither

---

3. Rankovich also lists, without arguing, ten other alleged inadequacies of counsel. In Arizona, opening briefs must present significant arguments, supported by authority, which set forth an appellant's position on the issues raised. Rule 31.13(c)(1)(iv) Ariz.R.Crim P., 17 A.R.S.; *State v. McCall,* 139 Ariz. 147, 163, 677 P.2d 920, 936 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). Failure to argue a claim constitutes abandonment and waiver of that issue. *State v. Nirschel,* 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987). These claims are therefore abandoned and waived.

reaches nor comments on the first prong of the inquiry.

As we have already noted, the statements admitted regarding Rankovich's national origin did not prejudice Rankovich in light of the overwhelming evidence of his guilt. Therefore, Rankovich cannot establish that his counsel's performance in not successfully keeping these statements of Rankovich's religion and nationality out of evidence was prejudicial. Accordingly, Rankovich cannot prevail on his ineffective assistance of counsel claim.

We have searched the record for fundamental error according to the mandate of A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). We have found none.

Judgment and sentence affirmed.

FELDMAN, V.C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.