NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CARLOS CRUZ CASTRO, *Appellant.*

No. 1 CA-CR 18-0095
FILED 3-28-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-005489-001 DT
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Reid
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

**W I N T H R O P**, Judge:

¶1　　　　Carlos Cruz Castro ("Appellant") appeals his convictions and sentences for two counts of aggravated assault, each a class two dangerous felony.　He argues the trial court abused its discretion by admitting improper character evidence and "other act" evidence of his criminal history and in denying his motion for new trial based on the admission of that evidence.　For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2　　　　In the fall of 2015, Appellant had an outstanding arrest warrant for absconding from "parole supervision."　Given concerns over his propensity for violence based on his prior criminal history, Surprise Police Department officers conducted a "threat assessment" and created an operation plan to locate, covertly surveil, and apprehend Appellant while attempting to minimize the risk to the public.

¶3　　　　On November 2, 2015, Officers Felix and Lindsey were in a blue Nissan Altima, and Detective Baldwin and Officer Galaz were in a grey Chevy Impala, both unmarked police vehicles.　Although not dressed in full uniform, Officers Felix, Lindsey, and Galaz wore vests with the word "POLICE" emblazoned on them and had their badges attached to the front of the vests; Detective Baldwin wore a lanyard with his badge on it.

¶4　　　　Detective Baldwin and Officer Galaz located Appellant driving alone in a white Dodge Charger and notified Officers Felix and Lindsey, who were nearby.　Appellant had pulled into a hotel parking lot, where Detective Baldwin and Officer Galaz were parked, but instead of parking his vehicle, he drove through the lot and toward the exit, just as Officers Felix and Lindsey arrived, blocking his exit.

¶5　　　　Officers Felix and Lindsey made eye contact with Appellant, and Officer Lindsey put his hand up in a stopping motion and said, "Stop."　The officers sought to immediately take Appellant into custody because they believed he had recognized them as police officers, may have recognized the Impala as a police vehicle when he drove past it in the parking lot, and might strike a person or vehicle in the parking lot or pose a danger to the public if he left the premises.

_____

[1]　　　We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant.　*State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

**¶6**         Instead of complying, Appellant reversed the Charger, did a "J-turn," and struck a parked truck before his Charger appeared to stall. Officer Felix tried to drive past Appellant, but before the Altima could get past the Charger, Appellant revved the Charger's engine, shot forward, and struck the Altima's driver's side. Meanwhile, Detective Baldwin had driven the Impala over to assist Officers Felix and Lindsey, and after striking the Altima, the Charger struck the passenger side of the Impala, where Officer Galaz was located. Believing it was a "lethal situation" and their safety was at risk, Officers Felix and Lindsey drew their firearms.

**¶7**         Appellant exited the Charger and ran. All four officers exited their vehicles, drew their weapons, and chased Appellant while identifying themselves as police officers and commanding Appellant to stop, but Appellant kept running. Detective Baldwin caught up to Appellant, pushed him to the ground, and he was eventually arrested.[2]

**¶8**         Appellant was subsequently charged by indictment with four counts of aggravated assault, each a class two dangerous felony (Counts I-IV); one count of resisting arrest, a class six felony (Count V); and two counts of aggravated assault, each a class four felony (Counts VI-VII). *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-1203, -1204, -2508.

**¶9**         On the date set for trial, Appellant filed a motion in limine seeking to preclude the State's witnesses from providing at least twenty-one items of testimony he contended constituted inadmissible character and other act evidence. Appellant stated he would argue at trial he "was justified in his reaction to reckless behavior of the undercover police officers" and the reasonableness of his behavior under the circumstances would be directly at issue. He further stated he would allege "the police officers intentionally or recklessly created a dangerous situation for [him]," and did so by violating both departmental policies and procedures and Arizona law; specifically, A.R.S. § 13-1204. He anticipated the State's witnesses would testify that the means of the arrest were necessary under the circumstances, about his "dangerous nature," and that he knew the officers were police officers to attempt to justify their own unjustifiable behavior.

---

[2]         As a result of the incident, Officer Felix suffered herniated and bulging discs, resulting in severe pain and numbness, and had to medically retire. Also, when the Charger struck the Impala, Officer Galaz injured his left pinky finger, which he can no longer straighten and has lost range of motion, despite undergoing months of physical therapy.

¶10 The parties discussed the motion at the close of jury selection. The State argued that, in light of Appellant's justification defense, it was important to provide context to the jury about why Appellant was being arrested, why the officers conducted the arrest the way they did, that Appellant knew police officers were after him because he knew he had a parole violation, and that knowing Appellant's history would be relevant to the officers' reasonable apprehension of imminent physical injury, an element of Counts I through IV. The State argued it should not have to present its case "in a vacuum" and only inform the jury that Appellant had a valid arrest warrant.

¶11 The trial court went through Appellant's list, weighing the probative value and the potential for unfair prejudice, and precluded most items as requested, but allowed the State to elicit certain items that were relevant to explaining the officers' conduct and to rebut Appellant's disclosed defense, including character evidence that Appellant was a potentially dangerous felon with a known violent criminal history and other act evidence that Appellant was on parole and had prior convictions for unlawful flight from a law enforcement vehicle, misconduct involving weapons, and aggravated assault.

¶12 During trial, the officers discussed Appellant's prior criminal history in connection with how they created the plan to apprehend him, testifying they believed they had to apprehend him immediately once he recognized them as officers because of his potential danger to the public. Appellant challenged the officers on cross-examination as to whether they were following their policies and procedures and generally regarding their actions that day.

¶13 In his defense, Appellant presented a retired police officer/defense investigator, who testified regarding his prior experience in making operational plans to apprehend suspects and opined it was dangerous for undercover officers to conduct an arrest. He had also examined the Altima and concluded someone "wouldn't be able to tell who or what was in that vehicle" because of the tinted windows. Another detective involved in Appellant's arrest testified on rebuttal, however, that although the Altima had tinted side windows, the front windshield had no tint.

**¶14** Appellant also testified, admitting he had five prior felony convictions[3] and was not in compliance with his parole on November 2, 2015. He also stated that, on October 17, 2015, he awoke to gunshots being fired at his home, he did not know who had fired the shots, and it scared him, but he did not contact police because of his parole violation. He stated that on November 2, the Altima aggressively came at him, it had dark-tinted windows such that he could not see inside, and he thought it could be the person who had shot at his house. He claimed he was in fear for his life, reversed the Charger, and accidentally hit the truck. He then drove forward and hit the Altima, and although he vacillated on whether he did so intentionally, he at one point admitted he intentionally accelerated forward. He claimed he thought the Impala was coming straight at him and then he saw a gun pointed at him. He then panicked and fled, thinking he was going to die, but claimed he stopped running when he heard, "Police. Put your hands up. Get on the ground." He said he was relieved when he realized it was police and claimed he turned, put his hands up, and did not resist arrest. However, Officer Galaz' body-cam footage showed Appellant was still running away when Detective Baldwin tackled him. Appellant also claimed he had no reason to believe he was being followed by police, although on cross-examination, he admitted knowing there was an active warrant out for his arrest for violating his parole, and he was "on the run from the law."

**¶15** The parties had several discussions with the trial court regarding final jury instructions, but defense counsel did not request a limiting instruction regarding character or other act evidence. At one point, the trial court stated "we don't really have" other act evidence and that it would omit such an instruction, and defense counsel remained silent. The court did later instruct the jury, in relevant part, to "not be influenced by sympathy or prejudice," the jury was to consider evidence of Appellant's criminal history "only as it may affect [his] believability as a witness," and Appellant's prior convictions were not "evidence of guilt of the crime for which [he] is now on trial for."

**¶16** In closing arguments, the prosecutor discussed Appellant's criminal history regarding how the officers conducted the arrest and how it rebutted his justification defenses. Defense counsel argued Officer Felix "went rogue" and did not follow procedure, and the officers were now

---

[3] After the State had rested its case-in-chief, the court addressed the State's motion to impeach Appellant with his prior felony convictions under Arizona Rule of Evidence ("Rule") 609, allowing testimony as to five sanitized convictions.

trying to justify what happened when they created the dangerous situation. Defense counsel also argued Appellant had testified even though he knew the jury would "hear all the bad things about [him]," and that Appellant was justified in his use of force. On rebuttal, the prosecutor highlighted the court's instruction regarding a defendant's criminal history, stating, "It tells you that his history is not evidence of guilt in this case and it's not. The State does not allege that he's guilty because he's done [a] bad thing in the past. But you may consider that in de[termining] the defendant's credibility as a witness."

¶17        The jury acquitted Appellant of five of the seven offenses, but found him guilty of Counts I and II, relating to placing Officers Felix and Lindsey in reasonable apprehension of imminent physical injury and using his vehicle as a dangerous instrument. The jury also found as aggravating factors that Appellant committed both offenses while on parole; he had a felony conviction within ten years of the date of the offenses; and he caused physical, emotional, or financial harm to Officer Felix.

¶18        Appellant moved for a new trial, arguing the trial court improperly admitted his prior criminal history. The State responded the evidence was properly admitted to explain how the officers' actions were reasonable under the circumstances and to rebut defense counsel's "misleading" arguments and characterizations of the case. The State noted that even the defense's investigative expert agreed that prior convictions of the sort known to the officers were "quite relevant in determining how to conduct an arrest." The State further argued it had been "careful to argue to the jury that the convictions should not be considered evidence of guilt," and Appellant did not suffer substantial prejudice from the admission of his prior convictions, especially because he also admitted having two additional felony convictions during his testimony.

¶19        The trial court held oral argument on the motion, and after hearing from the parties, denied the motion, explaining as follows:

> And let me say this: Before we actually came out here, we talked about this and, at that point in time, it became abundantly clear to the Court that the simplest way to state it is that the officers were going to be put on trial. There was mention that the officers were involved in an illegal -- something illegal and that they committed illegal acts; that is, broke the law.

Now, the one thing you cannot do with 404(B) evidence is argue, see, he was violent and that's why he was violent today. The argument was to present it to explain why it is the officers were doing what they did, why they felt they had to cut him off, why they were wearing their vests, basically the reasons for the stop that was going to be challenged in open court as an illegal stop. So, again, under normal circumstances, would that be permitted? No. But in this particular circumstance, when the defense is that, essentially, that Mr. Castro was defending himself from what we now know are police officers, it becomes relevant. It becomes probative as to the officer's conduct that is being put on trial. Is it more prejudicial? It's right there on the line, but I found that it is not more prejudicial than probative simply because of the defense, and that defense permeated the trial just like the defense of the officers' actions permeated the trial.

Trials, by their very nature, are prejudicial either to the State when there's the exculpatory evidence presented or to the defense when the facts of the case are and if there's 404(B) or other evidence presented that shows negatively on the defendant. That's the very nature of any trial. All evidence is prejudicial to one party or the other. The question is: Is it unfairly prejudicial and does that unfair prejudice outweigh any probative value?

Again, I don't see any other way the State could present an explanation for the officers' conduct. Was it aggressive? No question, you know. And I suspect -- and again, I call them compromised rulings or verdicts. I suspect the jury felt that way. I thought for sure they would get him guilty on the resisting arrest. It was the clearest showing of the case. I was surprised, but, again, I guess that's why we go to trial is you never know what a jury is going to do. But as far as the evidence to counter the defense argument, again, I suppose it could have been brought up in rebuttal to counter the defense. However, since the defense was made clear at the beginning of the trial, the Court cannot find that Mr. Castro was overly prejudiced by the evidence produced; that is, as to why the officers essentially treaded with caution and treaded perhaps more aggressively than they would have on other circumstances when they apprehend felons that have absconded.

**¶20** After finding Appellant had four prior felony convictions for sentencing purposes, the trial court sentenced Appellant as a Category 3 offender to a presumptive term of 15.75 years' imprisonment in the Arizona Department of Corrections for Count I and a concurrent, mitigated term of 10.5 years' imprisonment for Count II.[4]

**¶21** Appellant filed a timely notice of appeal. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## ANALYSIS

### I.    Standards of Review

**¶22** In general, we review a trial court's evidentiary rulings, including the admission of other act evidence, for an abuse of discretion. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 207, ¶ 11 (2018); *State v. Scott*, 243 Ariz. 183, 187, ¶ 14 (App. 2017). Because the trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice, we afford that court wide discretion when making determinations under Rule 403. *State v. Damper*, 223 Ariz. 572, 577, ¶ 20 (App. 2010) (citation omitted). We also review a trial court's denial of a motion for new trial for an abuse of discretion. *State v. Gulbrandson*, 184 Ariz. 46, 60 (1995).

**¶23** Even when a trial court errs in making an evidentiary ruling, however, a timely objected-to error is subject to harmless error review. *See State v. Rankovich*, 159 Ariz. 116, 120 (1988). When a defendant fails to timely object, we review for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018); *State v. Larin*, 233 Ariz. 202, 208, ¶ 14 (App. 2013). Under fundamental error review, a defendant must first establish trial error exists, and then must show the error was fundamental because it (1) went to the

---

[4] At sentencing, the trial court correctly acknowledged it lacked discretion to sentence Appellant to less than the presumptive sentence of 15.75 years' imprisonment for each count and doing so would constitute an "illegal sentence." *See* A.R.S. §§ 13-703(J); -708(A); -1204(C). Nonetheless, as the State concedes, the court's sentencing orders reflect the court imposed a 10.5-year sentence for Count II, and the sentencing transcript does not clearly reflect the sentence the court intended to impose for that count. Because the State did not file a cross-appeal, we lack subject matter jurisdiction to correct the sentence imposed for Count II. *See State v. Anderson*, 171 Ariz. 34, 35 (1992).

foundation of the case, (2) took from the defendant a right essential to his defense, or (3) was so egregious that he could not possibly have received a fair trial. *Escalante*, 245 Ariz. at 142, ¶ 21. A defendant who satisfies his burden of establishing fundamental error under prongs one or two must make a separate showing of prejudice, which requires proof that a reasonable jury could have reached a different verdict. *Id.* at 142, 144, ¶¶ 21, 29 (citations omitted).

## II.     *Arizona Rule of Evidence 404(a)*

**¶24**         Appellant argues the trial court abused its discretion in admitting improper character evidence that he was a potentially dangerous felon with a known violent criminal history and in denying his motion for new trial based on the admission of that evidence. Even assuming *arguendo* that Appellant has not waived this argument by failing to raise it in his motion for new trial, *see State v. Davis*, 117 Ariz. 5, 7-8 (App. 1977), we find no error requiring reversal.

**¶25**         Pursuant to Rule 404(a), "evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." *Rankovich*, 159 Ariz. at 120 (citing *Bell v. State*, 143 Ariz. 305 (App. 1984)).

**¶26**         Because "[t]he State may not introduce evidence of a person's violent nature in order to establish that he committed a violent crime," *id.* (citing *Bell*, 143 Ariz. at 309), we find concerning the testimony Appellant was a potentially dangerous felon with a known violent criminal history because of the danger that it could be used as proof of his intent to commit the charged offenses. However, evidence of Appellant's violent nature was relevant to rebut his defense theory that officers used unnecessarily excessive force and that he did not knowingly attempt to flee law enforcement officers. Also, the trial court instructed the jury that it was to consider evidence of Appellant's criminal history only as it might affect his believability as a witness, and not as evidence of his guilt in the charged crimes. Thus, in effect, the jury was instructed the evidence was not to be used to prove Appellant acted "in conformity therewith on a particular occasion." *Id.*; Ariz. R. Evid. 404(a). We presume the jury followed the

court's instructions.  *See State v. McCurdy*, 216 Ariz. 567, 574, ¶ 17 (App. 2007).[5]

**¶27**        Moreover, the record makes clear the jury did follow the court's instructions, and any error in admitting the testimony was harmless beyond a reasonable doubt.  *See Rankovich*, 159 Ariz. at 120; *State v. Spreitz*, 190 Ariz. 129, 142 (1997).  That the jury acquitted Appellant of five of the seven charged offenses shows it was not improperly influenced by the character evidence.  *See State v. Stuard*, 176 Ariz. 589, 600 (1993) (concluding the decision to acquit the defendant of certain charges "demonstrate[d] the jury's careful and proper consideration of the evidence"); *see also State v. Jones*, 203 Ariz. 1, 10, ¶ 33 (2002) (finding evidentiary error harmless and noting, "the jury actually acquitted Defendant of one of the sexual assault counts, suggesting that the jurors made reasoned decisions based on the evidence presented, rather than lashing out in an emotional response to the photographs").  And, even if the character evidence had not been admitted, the jury would still have heard about Appellant's criminal history, including his five prior felony convictions and parole status, because he testified in his defense.  Finally, the evidence supporting Appellant's convictions was overwhelming and included both video evidence and his admission that he intentionally accelerated forward into the Altima, satisfying the intent element of Counts I and II.  Thus, there is no reasonable probability the verdict would have been different had the character evidence not been admitted, *see State v. Hoskins*, 199 Ariz. 127, 142-43, ¶ 57 (2000), and any error in admitting the evidence was harmless.

>        III.        *Arizona Rule of Evidence 404(b)*

**¶28**        Appellant also argues the trial court abused its discretion in admitting other act evidence of his criminal history—specifically, that he was on parole and had prior convictions for unlawful flight from a law enforcement vehicle, misconduct involving weapons, and aggravated assault—and in denying his motion for new trial based on the admission of that evidence.

**¶29**        In general, relevant evidence is admissible at trial.  *See* Ariz. R. Evid. 401, 402.  However, under Rule 404(b), with limited exception, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

---

[5]        Also, as we have recognized, the prosecutor addressed this issue in his closing rebuttal argument, clarifying that Appellant's history was not to be used as evidence of guilt.

Such evidence is, however, "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). Rule 404(b)'s list of other purposes is not exhaustive; "if evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible even though it refers to his prior bad acts." *State v. Jeffers*, 135 Ariz. 404, 417 (1983) (citations omitted); *accord Scott*, 243 Ariz. at 187, ¶ 14 (citation omitted). Other act evidence is admissible if (1) it is shown by clear and convincing evidence, (2) it is offered for a proper purpose under Rule 404(b), (3) it is relevant to prove that purpose, (4) the act's probative value is not substantially outweighed by the danger of unfair prejudice, and (5) an appropriate limiting instruction is given if requested. *State v. Anthony*, 218 Ariz. 439, 444, ¶ 33 (2008).

### A. Clear and Convincing Evidence

**¶30** Appellant contends the trial court erred by not holding the State to its burden of proof of clear and convincing evidence. *See State v. Terrazas*, 189 Ariz. 580, 582 (1997). Because he did not clearly raise this argument below, we review for fundamental error.[6] *See State v. Lopez*, 217 Ariz. 433, 434-35, ¶ 4 (App. 2008).

**¶31** Appellant has not demonstrated that error occurred, fundamental or otherwise. Appellant argues the State had to produce evidence such as police reports or witnesses for the trial court to rule on the admissibility of the evidence. But a trial court need not conduct an evidentiary hearing before admitting evidence under Rule 404(b), *State v. LeBrun*, 222 Ariz. 183, 186, ¶ 10 (App. 2009), particularly when there is no "true factual dispute regarding the other acts," *State v. James*, 242 Ariz. 126, 133, ¶ 24 (App. 2017). In addition, Rule 404(b) does not specify or limit the evidence a trial court may consider in ruling on the admissibility of the other act evidence.

**¶32** Arizona Rule of Evidence 104(a) requires a court to "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible," and "[i]n so deciding, the court is not

---

[6] Even assuming *arguendo* that Appellant's motion for new trial can fairly be construed as raising the argument, this did not sufficiently preserve it because he did not timely raise the argument when the court ruled on his motion in limine. *See Larin*, 233 Ariz. at 208, ¶ 14 (reviewing an issue raised for the first time in a motion for new trial for fundamental error only).

bound by evidence rules, except those on privilege." Further, "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." Ariz. R. Evid. 104(b). Thus, a trial court has the authority to determine the admissibility of other-act evidence based solely upon offers of proof, including avowals of what witnesses' testimony will be. *Cf. Huddleston v. United States*, 485 U.S. 681, 689-90 (1988) (discussing the admission of evidence under Rule 104(b), Fed. R. Evid., and noting a trial court may at "a later point in the trial assess whether sufficient evidence has been offered to permit the jury to make the requisite finding").[7]

**¶33** In this case, both the prosecutor and defense counsel agreed the facts listed in the motion in limine would be testified to by the police officers. These facts were not in dispute. *See James*, 242 Ariz. at 133, ¶ 24 ("Given the absence of a true factual dispute regarding the other acts, the trial court did not abuse its discretion in finding the clear-and-convincing-evidence standard satisfied, even in the absence of a pretrial hearing with live witness testimony."). Further, the State had previously provided written notice of Appellant's prior convictions, including the cause numbers, and the fact that Appellant was on parole for one of the convictions.[8] Accordingly, the proffer of the expected testimony was sufficient to permit the court to find the other acts proven by clear and

---

[7] This reading of the rules of evidence is supported by the fact that upon review, we examine the evidence the State ultimately offered at trial to determine whether the prosecution proved the defendant's commission of the uncharged act by clear and convincing evidence—not the information and argument presented when the preliminary ruling of admissibility was made. *See, e.g., State v. Garcia*, 224 Ariz. 1, 11-12, ¶¶ 32-39 (2010) (reviewing evidence admitted during the aggravation phase of a capital trial in determining whether the court abused its discretion in admitting other act evidence); *Anthony*, 218 Ariz. at 443-45, ¶¶ 26-37 (reviewing evidence presented at trial to determine whether clear and convincing evidence supported other act evidence when the trial court admitted evidence based on the parties' briefs and oral argument); *State v. Nordstrom*, 200 Ariz. 229, 248, ¶ 57 (2001) (concluding the evidence at trial satisfied *Terrazas*' clear and convincing evidence standard), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239, 243, ¶ 20 (2012).

[8] A trial court may take judicial notice of its own records. *In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4 (App. 2000); Ariz. R. Evid. 201.

convincing evidence. *See State v. Vega*, 228 Ariz. 24, 29, ¶ 19 (App. 2011) ("Having decided to admit the testimony pursuant to Rule 404(b), the superior court necessarily concluded the testimony constituted clear and convincing evidence of the act." (citation omitted)); *see also State v. Lee*, 189 Ariz. 608, 616 (1997) (presuming trial judges know the law and apply it in making their decisions (citations omitted)). Thus, no error occurred, fundamental or otherwise.[9]

### B. Other Acts Offered for a Proper Purpose

**¶34**        Appellant next argues the other acts were not admitted for a proper purpose because no permissible inferences could have been drawn from the evidence.

**¶35**        In this case, however, the evidence of Appellant's prior criminal history was admitted for a proper purpose and not to prove his character to show action in conformity therewith. *See Huddleston*, 485 U.S. at 686 (noting the threshold inquiry under Federal Rule of Evidence 404(b) is whether "evidence is probative of a material issue other than character"). Appellant's history was relevant to explain the full circumstances regarding Appellant's arrest, including the officers' actions that day, and to show why the officers were placed in reasonable apprehension of imminent physical injury. *See* A.R.S. § 13-1203(A)(2*); see also Ferrero*, 229 Ariz. at 244, ¶ 23 (stating a proper non-propensity purpose to admit other act evidence is "allowing the jury to hear the full story of the crime" (quoting *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010))). Further, Appellant's defense made the other act evidence particularly relevant. *See State v. Hardy*, 230 Ariz. 281, 290, ¶ 39 (2012) (concluding that other act evidence was admissible, in part, to rebut a defense theory); *State v. Hargrave*, 225 Ariz. 1, 9-10, ¶ 22 (2010) (concluding that other act evidence was admissible because it was relevant to rebut the defendant's primary defense and "it made the defendant's story less plausible"). As the trial court noted in ruling on the

---

[9]        Moreover, even if we were to find error, Appellant cannot on this record demonstrate prejudice. The lack of pretrial proof by clear and convincing evidence does not go to the foundation of the case, take away an essential right, or prejudice Appellant—rather, any theoretical fundamental error or resulting prejudice would necessarily have come from the admission of the evidence itself, *see generally Escalante*, 245 Ariz. at 141-42, ¶¶ 18-19, 21, and the evidence admitted at trial—including Appellant's admissions to his prior felony convictions, his parole status, and that he had been in violation of his parole—proved the other act evidence by clear and convincing evidence.

motion for new trial, Appellant had made clear he would be putting the officers "on trial" and arguing he was justified in using force against them. The other act evidence went to the manner of the stop, which Appellant acknowledges was at issue in this case, and whether Appellant's use of force was justified and reasonable under the circumstances. *See* A.R.S. § 13-404(B)(2) (providing that the threat or use of physical force against another is not justified to resist an arrest the person knows or should know is being made by a peace officer, whether the arrest is lawful or unlawful, unless the physical force used by the peace officer exceeds that allowed by law); *State v. Carson*, 243 Ariz. 463, 465, ¶ 9 (2018) (stating that justification defenses use an objective standard based "on the beliefs of a 'reasonable person' in the defendant's circumstances rather than the defendant's subjective beliefs" (citation omitted)). Also, because Appellant denied knowing the officers were police officers, the fact he had absconded from parole was relevant to show he knew police officers could seek to arrest him, and went to the reasonableness of his belief that it could have been someone else following him. Accordingly, the other act evidence was relevant and probative to the issues at trial given Appellant's defenses.

### C. *Probative Value and Potential for Unfair Prejudice*

**¶36** Appellant also argues the trial court failed to properly weigh the probative value of the other act evidence against the evidence's potential for unfair prejudice.

**¶37** Arizona Rule of Evidence 403 provides that a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, *inter alia*, unfair prejudice. However, not all harmful evidence is unfairly prejudicial. *State v. Mott*, 187 Ariz. 536, 545-46 (1997). Only evidence that has an undue tendency to suggest a decision on an improper basis—such as emotion, sympathy, or horror—is unfairly prejudicial. *State v. Connor*, 215 Ariz. 553, 564, ¶ 39 (App. 2007) (citation omitted). The trial court is afforded broad discretion in deciding admissibility because it "is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice." *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998).

**¶38** In this case, the trial court weighed the evidence and excluded much of the character and other act evidence because of its potential for unfair prejudice. The admitted other act evidence was probative of the relevant issues at trial, and, thus, "was adversely probative in the sense that all good relevant evidence is." *State v. Schurz*, 176 Ariz. 46, 52 (1993); *see also State v. Villalobos*, 225 Ariz. 74, 80, ¶ 20 (2010) (concluding that other act

evidence was not unfairly prejudicial in light of the defendant's defenses, which made the other act evidence highly relevant); *State v. Lamar*, 144 Ariz. 490, 497 (App. 1984) ("[E]vidence of prior bad acts, another offense or misconduct, is admissible to show the complete story even though other prejudicial facts are revealed thereby." (citation omitted)). Moreover, the trial court sanitized all of Appellant's prior convictions when they were used for impeachment purposes, indicating the court sought to prevent any use of other act evidence for an improper purpose.

**¶39** Further, as we have recognized, Appellant did not request a Rule 404(b) limiting jury instruction, and the trial court was under no duty to *sua sponte* give one.[10] *See State v. Ellison*, 213 Ariz. 116, 133, ¶ 61 (2006) (stating that, absent fundamental error, a defendant may not complain if the trial court fails to *sua sponte* provide limiting instructions)[11]; *see also State v. Taylor*, 127 Ariz. 527, 530 (1980) ("It has long been the rule in this jurisdiction that unless an objection is interposed to an instruction, or a request for an instruction is made, error cannot be predicated on the giving or the failure to give such an instruction." (citations omitted)). The court did, however, instruct the jury that Appellant's prior convictions were not "evidence of guilt of the crime for which [he was] now on trial for." On this record, the trial court did not err in balancing the probative value of the other act evidence against its danger for unfair prejudice, and did not commit fundamental, prejudicial error in not providing a Rule 404(b) limiting jury instruction.

---

[10] By not specifically arguing the trial court erred in failing to give a limiting instruction, Appellant has abandoned and waived any such claim. *See State v. Carver*, 160 Ariz. 167, 175 (1989); *see also State v. Moreno-Medrano*, 218 Ariz. 349, 354, ¶ 17 (App. 2008) (declining to review for fundamental error where an appellant failed to argue an alleged error was fundamental).

[11] The fact that the jury acquitted Appellant of five charged crimes shows the jury was not improperly influenced by the other act evidence and the evidence was not unfairly prejudicial. *See Stuard*, 176 Ariz. at 600 (concluding the decision to acquit the defendant of certain charges "demonstrate[d] the jury's careful and proper consideration of the evidence"); *State v. Herrera*, 232 Ariz. 536, 548, ¶ 32 (App. 2013) ("[T]he fact that the jury did not find Herrera guilty of all charges suggests it had not been so affected by the evidence of other acts that the guilty verdicts it rendered were the result of 'emotion, sympathy or horror.'" (citations omitted)).

*D. Due Process*

**¶40** Appellant also argues the admission of the other act evidence violated his due process rights. Although it is a due process violation to admit evidence "that is so unduly prejudicial that it renders the trial fundamentally unfair," *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), it is only when "there are *no* permissible inferences the jury may draw from the evidence [that] its admission violate[s] due process," *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). And, "[e]ven then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" *Id.* (citation omitted). Because there were several permissible inferences that could be drawn from the other act evidence and it was not unfairly prejudicial, no due process violation occurred, and the trial court did not abuse its discretion in admitting that evidence.

## CONCLUSION

**¶41** Appellant's convictions and sentences are affirmed.

