859 P.2d 156

**STATE of Arizona, Appellee,**

v.

**Eldon Michael SCHURZ, Appellant.**

**Nos. CR–90–0283–AP, CR–92–0109–PC.**

Supreme Court of Arizona,
En Banc.

April 15, 1993.

Reconsideration Denied June 15, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Barbara A. Jarrett, Former Asst. Atty. Gen., Phoenix, for the State.

Martin, Hart & Fullerton by James R. Hart, II, Mesa, for Eldon Michael Schurz.

## OPINION

MARTONE, Justice.

Schurz was found guilty of murder in the first degree and attempted aggravated robbery, and sentenced to death. Appeal to this court is automatic under Rules 26.15 and 31.2(b), Ariz.R.Crim.P., and direct under A.R.S. § 13–4031. We granted review of the denial of his petition for post conviction relief and consolidated it with the automatic appeal. We now affirm his convictions and sentences.

## I. THE FACTS AND OUTCOME AT TRIAL

The evidence presented at trial, viewed in the light most favorable to sustaining the verdicts, establishes the following facts.

On the night of December 1, 1989, Marcella Bonito, Ronald Yazzie, Larry Figueroa, and an unidentified white male, were drinking beer in a stairwell at the back of a Phoenix motel. Defendant Eldon Schurz, Patrick Allison and Julie Moore came by and asked for some beer. After they were refused, Schurz grabbed the beer. Bonito tried to get it back, but gave up after Schurz threatened her. Schurz and his companions left and drank the beer, after which Schurz stated that the group at the motel must have more beer or money and suggested that they go back and take it.

Meanwhile, Jonathan Bahe, the victim, approached the first group. Having run out of gas, he was carrying a plastic jug of gasoline to his car. Bonito told him about the earlier robbery of their beer and complained that no one had done anything to prevent it. Bahe stated that, had he been there, he would have done something about it. Schurz, Allison and Moore returned. Schurz apparently overheard Bahe's statement and argued with him. When Schurz began pushing and punching Bahe, Bonito and Figueroa ran up the stairs to wake someone to call the police. Yazzie and the white male left.

Schurz, Bahe, and Allison remained. Moore was some distance away. Bahe was on the ground and, in an attempt to get away, crawled under a chain-link fence into a small enclosed rectangular space between a stairwell and a brick wall. Schurz picked up the plastic jug, smelled its contents, and then splashed gasoline on Bahe. Using a lighter, Schurz ignited a small puddle of gasoline. When the flames failed to spread to Bahe, he kicked the burning puddle toward him. Bahe went up in flames. After Schurz and Allison fled, Bahe managed to crawl under the fence and out of the enclosed space. Police and fire fighters arrived and extinguished the fire. Schurz later said to Moore, "He wouldn't give me the money or the beer, so I burned him."

Bahe was conscious on the way to the hospital. He was severely burned over 90 to 100 percent of his body and was moaning and shaking in pain. Much of his body was completely charred. He was unrecognizable. Even his race was unclear. The burning had caused the long muscles in his limbs to shorten so that his arms and legs were rigidly flexed and could not be straightened. He was given morphine to control the pain, but there was little else that could be done.

Bahe lived for approximately four and a half hours and, remarkably, was conscious enough to respond to questions from the police. Because of the extremely damaged state of his mouth and tongue—which were charred—his answers were nearly impossible to understand.

Approximately half an hour after the burning, Schurz and his companions were picked up by an unidentified man who wanted to buy some cocaine. Schurz claimed to know where to get some, and after exacting money from the man, directed him to a housing project where Schurz got out of the car briefly but returned without any cocaine. Schurz then said that he was robbing the man and held a lighter flame to his neck. The driver put up no resistance and Schurz, Allison, and Moore fled.

Schurz and Allison were arrested a few hours later. Both were charged with first degree murder and attempted aggravated robbery, but Allison pled guilty to the latter charge in return for testifying against Schurz. Allison was placed on probation. The evidence against Schurz consisted primarily of the testimony of Bonito, Yazzie, and Allison, who was the only other person present during the burning. The defense presented no evidence. Schurz's principal theory was that Allison killed Bahe. He also argued that his intoxication made it impossible for him to form the intent required for the offenses.

Schurz was convicted of first degree murder, on both a premeditation and a felony murder theory, and attempted aggravat-

ed robbery.[1] He was sentenced to death for murder and to the maximum twelve year prison term for the attempted aggravated robbery with two prior convictions.

## II. ISSUES

Schurz has presented the following issues on appeal and in his petition for review of the Rule 32 proceeding:

### A. *Trial Issues*

1. Did the trial court err by admitting evidence of the robbery that occurred after the murder?

2. Did the trial court err by denying defendant's motion for a directed verdict of acquittal on the attempted aggravated robbery and felony murder charges?

3. Did the trial court err by denying defendant's request for further mental examinations and testing?

4. Did the trial court err by failing to instruct the jury that it could consider evidence of defendant's intoxication in determining whether defendant had the requisite mental state for premeditated murder?

### B. *Sentencing Issues*

1. Did the trial court err by failing to find, as a mitigating circumstance, that defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired?

2. Did the trial court err by finding that the mitigating circumstances were not sufficient to call for leniency in light of the one aggravating circumstance?

1. The verdict form required the jury to indicate its verdict of guilty or not guilty on the first degree murder charge and then, if the verdict was guilty, whether it unanimously found premeditated murder, felony murder, or split on which theory was applicable. The jury checked both the premeditation and the felony murder boxes.

2. Because the additional hurdle argument is squarely presented in this case, and its resolution will promote clarity in the law, I would reach and reject it. Whatever *State v. Marah-*

### C. *Post–Conviction Relief Issues*

1. Was defendant denied effective assistance of counsel?

## III. RESOLUTION

### A. *Trial Issues*

1. *Evidence of the Robbery*

Schurz claims that the trial court erred by allowing the prosecution to present evidence of the robbery of the unidentified man that occurred after the murder. He argues that this evidence should have been excluded under Rule 404(b), Ariz.R.Evid.

 Under Rule 404(b), evidence of other crimes, wrongs or acts is not admissible to prove that behavior conforms to character. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. In this case, the robbery, which involved a threatened burning, tended to establish identity as well as a motive for defendant's earlier actions. It also tended to rebut the defense theory that defendant was too inebriated to know what he was doing.

Relying on *State v. Marahrens*, 114 Ariz. 304, 307, 560 P.2d 1211, 1214 (1977), Schurz also argues that before evidence is admissible under Rule 404(b), the evidence of the other crime must be substantial enough to take the case to the jury. He argues that Allison's testimony about the robbery was insufficient to meet this additional hurdle.

 Because the evidence here was sufficient under any standard, a majority of the court chooses not to reach the additional hurdle argument.[2] Allison's testimo-

*rens,* 114 Ariz. 304, 307, 560 P.2d 1211, 1214 (1977), and its predecessor, *State v. Hughes,* 102 Ariz. 118, 123, 426 P.2d 386, 391 (1967) meant, and it is hard to say, once Arizona adopted its Rules of Evidence, all prior evidentiary decisions in conflict with those rules were superseded. There is no additional evidentiary hurdle to the admission of evidence under Rule 404(b), Ariz.R.Evid. If it is relevant, it may be admitted, subject to any weighing under Rule 403, Ariz.R.Evid. *Huddleston v. United States,* 485 U.S. 681, 689–90, 108 S.Ct. 1496, 1501, 99

ny was more than sufficient for the jury to find that a robbery took place and that defendant committed it.

■ Defendant also argues that even if otherwise admissible, the subsequent robbery evidence should have been excluded under Rule 403, Ariz.R.Evid. Although relevant, evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice "means an undue tendency to suggest decision on an improper basis," Fed.R.Evid. 403, Advisory Committee Note, such as emotion, sympathy or horror.

■ But not all harmful evidence is unfairly prejudicial. After all, evidence which is relevant and material will generally be adverse to the opponent. The use of the word "prejudicial" for this class of evidence, while common, is inexact. "Prejudice," as used in this way, is not the basis for exclusion under Rule 403. *Dollar v. Long Mfg. Co.,* 561 F.2d 613, 618 (5th Cir. 1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); *Borden, Inc. v. Florida East Coast Ry. Co.,* 772 F.2d 750, 756 (11th Cir.1985); *United States v. Monahan,* 633 F.2d 984, 985 (1st Cir.1980); *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir.1980). *See* Thomas F. Green, Jr., *Relevancy and Its Limits,* 1969 Ariz.St.L.J. 533, 544; Andrew K. Dolan, *Rule 403: The Prejudice Rule in Evidence,* 49 S.Cal. L.Rev. 220, 238 (1976); and, *McCormick on Evidence* 780 (4th ed. 1992).

■ Here, the evidence of the subsequent robbery was not unfairly prejudicial. It was adversely probative in the sense that all good relevant evidence is. It tended to show Schurz was the person who attempted to rob and burned Bahe. Within

minutes, he robbed and threatened to burn again. Adverse, yes; unfairly prejudicial, no. And because identity was an issue, it can hardly be said that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. Once the defendant attempted to shift responsibility to Allison, the evidence had enough probative value to withstand any Rule 403 weighing process.[3]

### 2. *Motion for Directed Verdict*

■ Defendant claims that the trial court erred when it denied his motion for a directed verdict of acquittal on the attempted aggravated robbery and felony murder charges pursuant to Rule 20, Ariz. R.Crim.P. To withstand such a motion, the state must produce enough evidence that a reasonable person could conclude that the defendant is guilty beyond a reasonable doubt. *State v. Nunez,* 167 Ariz. 272, 278, 806 P.2d 861, 867 (1991). In reviewing whether the standard is met, this court views the evidence and the inferences to be drawn from the evidence in the light most favorable to sustaining the verdict. *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

Robbery is the unlawful taking of property from another person or that person's immediate presence, by using or threatening force with the "intent either to coerce surrender of property or to prevent resistance." A.R.S. § 13–1902. If an accomplice is present, the robbery is aggravated robbery. A.R.S. § 13–1903. One commits attempted aggravated robbery if one, with the requisite intent, and accompanied by an accomplice, takes some step toward accomplishing the robbery. *See* A.R.S. § 13–1001(A)(2).

L.Ed.2d 771 (1988), so held for the analogous federal Rule 404(b). This court adopted the *Huddleston* analysis in *State v. Atwood,* 171 Ariz. 576, 638, 832 P.2d 593, 655 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993), thus rejecting any suggestion to the contrary.

**3.** We note, as did the Court in *Huddleston,* 485 U.S. at 691, 108 S.Ct. at 1502, that in addition to the Rule 403 weighing, a defendant is protected

under Rule 404(b) by the requirements that (1) the "other acts" evidence is offered for a purpose that is proper under Rule 404(b); (2) that the purpose is relevant under Rule 402; (3) that if relevance is dependent on the fulfillment of a condition, evidence sufficient to support a finding is offered under Rule 104(b); and (4) if requested, a limited admissibility instruction is available under Rule 105.

Allison testified that Schurz suggested they go back and rob the group at the motel of beer or money, that he accompanied Schurz as his accomplice, and that Schurz afterwards said he burned Bahe because he would not give him beer or money. This evidence was sufficient to allow the jury to find beyond a reasonable doubt that Schurz had the requisite intent, that there was an accomplice present, and that defendant made some attempt, albeit unsuccessful, to get beer or money from Bahe. The trial court did not err in denying Schurz's motion for a directed verdict on the attempted aggravated robbery charge.

Schurz also moved for directed verdict on the first degree murder charge. The verdict indicates that the jury found Schurz guilty of first degree murder on both a premeditation and felony murder theory. That is, the jury found that Schurz acted with premeditation, A.R.S. § 13–1105(A)(1), and that he killed the victim "in the course of and in furtherance of" the commission of the attempted aggravated robbery. A.R.S. § 13–1105(A)(2). Defendant argues that the evidence was insufficient to support the felony murder theory and that the court therefore erred in denying his motion for directed verdict.[4]

We need not, however, reach the merits of this argument because the jury also found Schurz guilty of premeditated murder. Schurz was convicted of one count of first degree murder on two alternative theories. As long as one theory supports the conviction, we need not address the other.

### 3. Mental Examinations

Schurz moved for a mental examination under Rule 11.2, Ariz.R.Crim.P., to determine his competency to stand trial and to investigate his mental condition at the time of the offense. He claimed he was unable to recall the events surrounding the offenses and may have been suffering from a mental disorder caused by alcohol and other drug abuse. He also filed a "Motion for Neurological Examination of Defendant at Maricopa County Medical Center at County Expense" seeking to determine whether he had an organic brain disorder. Schurz's Notice of Defenses, filed the same day, indicated that he was considering an insanity defense.

The court ordered a pre-screening report to assist it in determining whether "reasonable grounds" existed for a full-blown examination under Rule 11.3(a), Ariz. R.Crim.P. The resulting report indicated that there was absolutely no question regarding Schurz's present competency, that alcohol or other drug abuse could cause the memory lapses Schurz claimed to have experienced, and that because he had suffered a head trauma six or seven months before his arrest there was some possibility of a neurological disorder. On the basis of the report, the trial court denied Schurz's motions. He now claims that this was error.

Schurz does not claim that he was incompetent to stand trial, but maintains that the trial court's denial of his motions deprived him of his due process right under the Fourteenth Amendment to retain at state expense a competent psychiatrist to evaluate his mental condition at the time of the offenses and assist him in his defense. He cites *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). A criminal accused's right to the assistance of a psychiatrist assumes constitutional proportion, however, only upon a showing that his or her sanity at the time of the offense is likely to be a "significant factor" at trial.

---

4. Rule 20, Ariz.R.Crim.P., allows the court to "enter judgment of acquittal of one or more *offenses* charged." (Emphasis added.) Therefore, a directed verdict is the proper tool for dealing with an offense, not a theory. If the court determined that the felony murder theory was not supported by the evidence, it would have refused to give a felony murder instruction to the jury. As long as the premeditation theory was supported by substantial evidence (and there was no serious contention before the trial court that it was not) there was no offense on which the judge could have entered a judgment of acquittal. The issue was properly raised, however, by defendant's motion for directed verdict on all the charges and thus we discuss it in those terms on appeal.

*Id.* at 83, 105 S.Ct. at 1096. Here, the court concluded, based on the pre-screening report and the information presented in Schurz's motions, that insanity was not an issue in this case, notwithstanding the notice that it was a possible defense. Having reviewed the report as well as the entire record ourselves, we cannot conclude that the trial court abused its discretion in this regard.

There is nothing in the report to indicate that there was any real question regarding Schurz's sanity at the time of the offenses. The report indicated that his drug and alcohol use may have caused some blackouts, but this does not constitute an insanity defense. *See State v. Walton,* 159 Ariz. 571, 588–89, 769 P.2d 1017, 1034–35 (1989), *aff'd,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Indeed, Schurz did not pursue an insanity defense at trial. When his mental condition was at issue as a possible source of mitigation for sentencing purposes, he was authorized to retain a psychiatrist at county expense to assist him and he did so.

### 4. *Intoxication*

Schurz requested a voluntary intoxication instruction as a defense to the charge of murder in the first degree. The court declined to give the instruction for the charge of murder, but did give it as a defense to the charge of attempted aggravated robbery, which requires a specific intent. Schurz argues that the court's failure to give the instruction is reversible error.

Schurz did make a general objection to the instructions to the extent that they differed from the ones he had requested. He made specific objections to other instructions, but not to the failure to give an intoxication instruction on the murder charge. Rule 21.3(c), Ariz.R.Crim.P., provides that no party may assign as error on appeal the court's failure to give an instruction unless that party objects "stating distinctly the matter to which he objects and the grounds of his objection." A general objection to the failure to give an instruction does not preserve the point.

*State v. Schilleman,* 125 Ariz. 294, 298, 609 P.2d 564, 568 (1980). Waiver, of course, does not preclude our review of fundamental error.

We first determine whether there was error, and if so, whether the error was prejudicial in light of the entire record "before the error can be labeled as fundamental." *State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988).

Under A.R.S. § 13–503, the jury may consider voluntary intoxication in determining culpable mental state only when the culpable mental state of "intentionally or with the intent to" is a necessary element of the offense. Under A.R.S. § 13–1105(A)(1), the culpable mental state for murder in the first degree is "[i]ntending or knowing that his conduct will cause death." The case against Schurz went to the jury on an instruction that he "intended or knew" that his conduct would cause death. In *State v. Rankovich,* 159 Ariz. 116, 122, 765 P.2d 518, 524 (1988), we held that if an accused is charged with knowingly committing first degree murder, the accused is not entitled to a voluntary intoxication instruction. In *State v. Lavers,* 168 Ariz. 376, 389, 814 P.2d 333, 346, *cert. denied,* —— U.S. ——, 112 S.Ct. 343, 116 L.Ed.2d 282 (1991), we stated that to charge "knowingly" rather than "intentionally," in order to preclude the introduction of evidence of intoxication, is an acceptable legal strategy under our statute. This is surprising to some because our first degree murder statute is a departure from the common law. Before the statute was enacted, the jury could consider voluntary intoxication on the question of malice aforethought which was then an essential element of murder. *State v. Magby,* 113 Ariz. 345, 353, 554 P.2d 1272, 1280 (1976). A.R.S. § 13–503, making voluntary intoxication relevant only to the culpable mental state of intent, and A.R.S. § 13–1105(A)(1), making knowingly an acceptable mental state for murder in the first degree, have changed all that. And, we have upheld the constitutionality of A.R.S. § 13–503. *State*

*v. Ramos,* 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982).

The question before us is whether voluntary intoxication is material because the charge against the defendant is "intending *or* knowing" rather than merely "knowing." Knowing is a less culpable mental state than intent but is included within it so that whenever a jury determines that a defendant has acted intentionally, it has necessarily concluded that he acted knowingly. A.R.S. § 13–202(C). Having concluded that the defendant acted knowingly, the jury may not consider voluntary intoxication with respect to the defendant's culpable mental state. It follows that the giving of a voluntary intoxication instruction in a murder case in which both intent and knowing are alleged would be improper. It would be plainly violative of A.R.S. § 13–503. In short, the "intending" component of an allegation of "intending or knowing" is superfluous. The jury should never reach the question of intent and, thus, the voluntary intoxication instruction would always be erroneous. As a matter of logic and statutory construction, an allegation of "intending or knowing" is indistinguishable from an allegation of "knowing." An inexorable result of the statute, then, is that voluntary intoxication under A.R.S. § 13–503 will be considered by the jury only when intent is alleged and knowing is not alleged.

Because the allegation here was "intending or knowing," the failure to give the intoxication instruction was not error. Since it was not error, it cannot be fundamental error. *Cf. State v. Whittle,* 156 Ariz. 405, 408, 752 P.2d 494, 497 (1988); *State v. Gillies,* 135 Ariz. 500, 510–11, 662 P.2d 1007, 1017–18 (1983).[5]

### B. *Sentencing Issues*

A.R.S. § 13–703 sets forth Arizona's capital sentencing scheme. The state has the burden of proving beyond a reasonable doubt the aggravating circumstances contained in A.R.S. § 13–703(F). A.R.S. § 13–703(C); *State v. Jordan,* 126 Ariz. 283, 286, 614 P.2d 825, 828, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). The defendant has the burden of proving by a preponderance of the evidence any mitigating factors. A.R.S. § 13–703(C); *State v. McMurtrey,* 143 Ariz. 71, 73, 691 P.2d 1099, 1101 (1984). This court does not defer to the trial court's findings in this regard, but conducts an independent review of the propriety of the death sentence. *State v. White,* 168 Ariz. 500, 510, 815 P.2d 869, 879 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

The trial court found only one aggravating circumstance—that the murder was especially cruel, heinous or depraved within the meaning of A.R.S. § 13–703(F)(6). It found no statutory mitigating circumstances but found that Schurz had proved the following five non-statutory mitigating circumstances:

(1) A mixed personality disorder with passive-aggressive, avoidant and antisocial features, coupled with opiate and alcohol dependence and mixed substance abuse;

(2) A history of contacts with the criminal justice system, some of which resulted in incarceration as a juvenile and as an adult;

(3) Successful completion of the requirements for a GED certificate and a course of study in a substance abuse treatment program;

(4) The determination of guilt of Patrick Allison (the former co-defendant in this case) by plea agreement where the plea agreement contained a stipulated sentence of probation with no jail and a dismissal of the murder charge;

---

**5.** This case affords us no opportunity to consider the quite separate question of whether § 13–503 applies only to the element of "culpable mental state" and not to the concept of "premeditation" under A.R.S. § 13–1101(1). In addition to intention or knowledge, premeditation requires "reflection." Thus, it can be argued that intoxication could be relevant and admissible on the question of reflection, even if not admissible on the question of culpable mental state. We express no opinion on the issue.

(5) A "difficult family history" in the past.

Special Verdict at 7–8. The trial court concluded that these factors were not sufficiently substantial to call for leniency and imposed a sentence of death.

■ Schurz does not challenge the trial court's finding that the murder was cruel, heinous or depraved. The cold-blooded burning to death of a person who is attempting to flee demonstrates the kind of "vile" mind-set that we have labeled heinous or depraved. The suffering—both mental and physical—of a person who remains conscious while receiving third and fourth degree burns over almost 100% of his body more than adequately demonstrates cruelty. *See State v. Gretzler*, 135 Ariz. 42, 51–52, 659 P.2d 1, 10–11, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) (discussing the requirements of the § 13–703(F)(6) aggravating circumstance). We agree with the trial court that the evidence proves this aggravating factor beyond a reasonable doubt.

### 1. A.R.S. § 13–703(G)(1) Mitigating Circumstance

■ Schurz argues that the trial court erred by failing to find, as a mitigating circumstance, that due to his intoxication at the time of the offense, his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13–703(G)(1).

Allison said that in the five hours before the burning, Schurz had shared approximately 24 cans of beer and a bottle of wine with him and Moore. Yazzie, apparently the only sober person present, testified that Schurz appeared drunk. Schurz told the doctor who prepared the pre-screening

report that he had also ingested heroin that day and could not recall the events surrounding the burning. Later, however, Schurz confessed to Dr. Tatro, who performed a psychological examination for use at sentencing, that he did remember what happened and that he had previously lied to police about his memory lapse. He stated that although he had consumed a large amount of beer and used some heroin that night, he was still aware of what was happening. Dr. Tatro stated in his report that "it does not appear that [defendant] was so intoxicated at the time that he did not know what he was doing or that he was unable to appreciate the wrongfulness of his actions." He concluded, essentially, that defendant knew what he was doing but, because of his intoxication and a personality hardened by past institutionalization, simply did not care.[6] Schurz also told Dr. Tatro that he often went weeks without using alcohol and drugs before giving in to the urge.

We agree with the trial court that the evidence is insufficient to establish the existence of the (G)(1) mitigating circumstance. Contrary to Schurz's argument, we do not find that an uncaring attitude, even though partially caused by drug use, constitutes an impaired ability to "appreciate" the wrongfulness of one's conduct. Nor is there evidence that Schurz's intoxication deprived him of his ability to control his conduct. This case is in sharp contrast to *State v. Rossi (Rossi II)*, 154 Ariz. 245, 251, 741 P.2d 1223, 1229 (1987), in which we found persuasive uncontradicted evidence that the defendant's behavior was largely controlled by his $1000 per week cocaine addiction. Instead, it is more like *State v. Stanley*, 167 Ariz. 519, 530–31, 809 P.2d 944, 955–56, *cert. denied*, —— U.S. ——, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991), in which we found that evidence of the defen-

6. The psychologist stated:
 What is likely is that the chemicals in his system did act, along with a value system that judges acts that most people think wrong to be right when they occur in certain circumstances, to inure him to any feeling of wrongfulness about what was going on. Based on his descriptions of events, he had a clear understanding that murder was being committed, that such behavior was very wrong in the eyes of the law, and that he and his companions were at risk of grave punitive consequences. In sum, his defect at the time was not that he did not know what was going on was wrong, but that he did not feel it was wrong.

dant's drinking and drug use prior to the murder and his history of substance abuse was insufficient in itself to establish the existence of the § 13–703(G)(1) mitigating circumstance.

### 2. *Sufficiency of Mitigating Circumstances*

 Defendant also claims that the trial court erred in finding that the nonstatutory mitigating factors were not sufficiently substantial to call for leniency. In particular, defendant argues that the disparity between his sentence and Allison's requires that his death sentence be modified to life imprisonment.

This court has on occasion considered as a mitigating factor the disparity between the sentence of a defendant sentenced to death and a codefendant or accomplice sentenced to some term of imprisonment. Upon review of the cases, however, it is clear that it is not mere disparity between the two sentences that is significant, but, rather, unexplained disparity. Where the disparity is justified by the relative culpability of the parties, it has been given little, if any, weight. *See, e.g., State v. Marlow*, 163 Ariz. 65, 72, 786 P.2d 395, 402 (1989) (death sentence set aside for defendant convicted on accomplice theory when possible principal sentenced to four years); *State v. Gerlaugh*, 135 Ariz. 89, 91, 659 P.2d 642, 644 (1983) (Cameron, J., concurring) (apparent disparity justified by defendant's greater participation in the crime and mitigating factors applicable to codefendant). In addition, where the murder is especially cruel, heinous or depraved, even unexplained disparity has little significance. *See, e.g., State v. Lambright*, 138 Ariz. 63, 76, 673 P.2d 1, 14 (1983) (fact that participant in particularly heinous crime was granted immunity in exchange for testimony did not outweigh aggravating factors), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984), *overruled on other grounds by Hedlund v. Sheldon*, 173 Ariz. 143, 840 P.2d 1008 (1992); *cf. State v. Watson*, 129 Ariz. 60, 64, 628 P.2d 943, 947 (1981) (death sentence set aside; defendant may well have been more culpable than accomplice who received life imprisonment, but murder was not particularly heinous or cruel).

The jury found Schurz guilty of premeditated murder and in doing so rejected the defense theory that it was Allison, rather than he, who actually set Bahe on fire. Upon reviewing all the evidence offered in mitigation, the trial court reached the same conclusion and noted that the jury was not instructed on accomplice liability on the murder charge. This difference in culpability explains and justifies the disparity between the two sentences.

In addition, we do not find, upon review of the record, that the other non-statutory mitigating factors found by the trial court are entitled to enough weight to call for leniency in light of the especially cruel or heinous nature of this murder. Most of the factors come from Dr. Tatro's report, which paints a picture of defendant as a man who, as a result of a less than ideal early family life and almost constant incarceration between the ages of 12 and 20, has developed a volatile and violent personality extremely maladapted to living in society. As tragic as this picture may be, it weighs as much in favor of the death sentence as against it.

### C. *Post–Conviction Relief*

 Defendant petitioned the trial court for post-conviction relief pursuant to Rule 32, Ariz.R.Crim.P., claiming that he was denied effective assistance of counsel. The court held that defendant failed to state a colorable claim and denied relief without an evidentiary hearing. *See State v. Watton*, 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990) (defendant entitled to an evidentiary hearing only if petition presents a colorable claim—one that, if defendant's allegations are true, might have changed the verdict). We apply an abuse of discretion standard when reviewing the trial court's denial of an evidentiary hearing on a petition for post-conviction relief. *Id.* at 325, 793 P.2d at 82.

In support of his claim that he received ineffective assistance of counsel, defendant alleges that trial counsel (1) prevented him

from testifying by telling him that it would hurt his defense, (2) failed to spend sufficient effort to locate an unidentified white male who was at the scene prior to the murder, (3) failed to adequately cross-examine Allison, and (4) failed to call character witnesses at the mitigation hearing. He filed a supplemental petition claiming that trial counsel was also ineffective for failing to pursue an insanity defense.

The standard to be applied in evaluating claims of ineffective assistance of counsel is clear.

> First, the defendant must show that counsel's performance was deficient. For that, he must specify acts and omissions of counsel that allegedly constituted ineffective assistance. Second, the defendant must show that the deficient performance prejudiced his defense. To show that, the defendant must be able to demonstrate a "reasonable probability" that the verdict might have been affected by the error.
>
> We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." In addition, we must evaluate counsel's performance prospectively. Thus, the defendant bears a heavy burden to overcome the presumption that counsel's action "might be considered sound trial strategy" at the time.

*Walton,* 159 Ariz. at 591–92, 769 P.2d at 1037–38 (citations omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ With this standard in mind, it is clear that Schurz has failed to state a colorable claim based on counsel's failure to locate the unidentified white male or his allegedly inadequate cross-examination of Allison. Defendant does not state what the white male's testimony might have been or how it would have affected the trial, but merely argues that had this witness been found, the verdict would have been different. Furthermore, he fails to explain the way in which counsel's preparation for cross-examination of Allison was inadequate, what questions should have been asked, or how they would have affected the outcome of the trial.

■ Schurz has also failed to state a colorable claim that counsel's assistance was ineffective because he advised him not to testify. By failing to explain the way in which counsel's advice was defective, Schurz fails to overcome the presumption that it was sound. Schurz does not allege that he was unaware of his right to testify, nor that counsel deprived him of this right. It appears merely that he now regrets his decision. In addition, it is difficult to imagine how his testimony could have changed the outcome of the trial given that defense counsel thoroughly argued his theory that Allison rather than Schurz was the murderer.

■ Trial counsel's failure to pursue an insanity defense also does not constitute a colorable claim of ineffective assistance of counsel. As discussed earlier, the pre-screening report prepared in connection with defendant's Rule 11 motion failed to indicate any real possibility that a viable insanity defense was available. Schurz presents nothing to suggest that the decision to concentrate on other defenses was other than sound trial strategy. The wisdom of this strategy is supported by Dr. Tatro's psychological report, which concluded that Schurz was in all likelihood not mentally ill at the time of the murder.

■ Finally, we find that counsel's failure to call the character witnesses Schurz suggested at the sentencing hearing does not constitute ineffective assistance of counsel. Defense counsel submitted a thirty-two page sentencing memorandum, along with a lengthy report prepared by Dr. Tatro and letters from Schurz's mother, aunt, grade school teacher, and family friend. We agree with the trial court that it is impossible to conclude that the testimony of these witnesses would have made any difference in the sentencing.

Schurz failed to state a colorable claim of ineffective assistance of counsel. The trial court therefore did not abuse its discretion in denying, without a hearing, defendant's petition for post-conviction relief.

## IV. DISPOSITION

We have examined the record for fundamental error as required by A.R.S. § 13–4035 and find none. For the foregoing reasons, we affirm Schurz's convictions and sentences.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.