FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELDON M. SCHURZ, *Petitioner-Appellant*, v. CHARLES L. RYAN, Arizona Department of Corrections, *Respondent-Appellee*. | No. 07-99025 D.C. No. CV-97-00580-EHC OPINION |

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, Senior District Judge, Presiding

Argued and Submitted
April 19, 2012—San Francisco, California

Filed September 12, 2013

Before: Alex Kozinski, Chief Judge, M. Margaret
McKeown and N. Randy Smith, Circuit Judges.

Opinion by Chief Judge Kozinski

## SUMMARY[*]

### Habeas Corpus/Death Penalty

The panel denied a 28 U.S.C. § 2254 habeas corpus petition challenging a murder conviction and capital sentence alleging ineffective assistance for failure to present mitigating evidence.

The panel rejected petitioner's claim that counsel was ineffective by failing to present evidence about his drug abuse and dysfunctional family life, because the evidence he cited would have been cumulative. The panel addressed the remaining evidence that petitioner presented as speculative, minimally relevant at best, and concluded that the evidence was not reasonably likely to have made an impact at sentencing.

## COUNSEL

Jennifer Y. Garcia (argued) and Paula K. Harms, Assistant Federal Public Defenders, and Jon M. Sands, Federal Public Defender, Phoenix, Arizona, for Petitioner-Appellant.

John Pressley Todd (argued), Assistant Attorney General, Arizona Attorney General's Office, Phoenix, Arizona, and Terry Goddard, Attorney General, Kent Cattani, Chief

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Counsel, Criminal Appeals/Capital Litigation Section, and
Melissa Alice Parham, Assistant Attorney General, Criminal
Appeals/Capital Litigation Section, Phoenix, Arizona, for
Respondents-Appellees.

---

**OPINION**

KOZINSKI, Chief Judge:

You can't always get what you want. But Eldon Schurz
just about did. He wanted the judge who sentenced him to
hear a laundry list of mitigating evidence, and his attorney
dutifully presented it. Because the judge had most of the
mitigating evidence, Schurz can't show any prejudice from
his attorney's alleged ineffective assistance. Thus, we affirm
the district court.

## I. BACKGROUND

Late one evening, a thirsty Eldon Schurz and two friends
approached a group of people drinking behind a motel and
demanded a beer. When they refused, Schurz grabbed some
and sauntered off.

Schurz and his friends returned later the same night, in
search of money and more booze. They arrived in time to
overhear a newcomer, Jonathan Bahe, assure the group that
if he'd been there when Schurz stole the beer, he'd have
stepped in. These words set Schurz off. Overcome by a
barrage of punches, Bahe tried to escape by crawling under a
nearby chain-link fence, trapping himself in an enclosed area
between a stairwell and a brick wall. Schurz found a jug of
gasoline sitting nearby, smelled it and then splashed it on
Bahe. Schurz lit a small puddle of gas using a lighter, but,

seeing that the flame wasn't spreading, began kicking the burning puddle toward a terrified Bahe. As Bahe burst into flames, Schurz ran.

When police arrived and put out the flames, Bahe was an unrecognizable, charred husk. The blaze had shortened the muscles in his arms and legs, leaving him in a rigid contortion. Remarkably, Bahe was still alive and conscious. In his last excruciating moments, he was able to answer a few questions from the police at the hospital, although his mouth and tongue were so charred that he was nearly impossible to understand. Schurz later said all we needed to know: "He wouldn't give me the money or the beer, so I burned him."

A jury convicted Schurz of first degree murder. At sentencing, the judge found one aggravating circumstance: The murder "was especially heinous and depraved." After considering the mitigating circumstances and determining they did not outweigh the aggravating factor, the judge sentenced Schurz to death.

Schurz appealed his conviction and then filed three petitions for state post-conviction relief (PCR). Neither tactic was successful. Schurz then turned to federal court, advancing a claim of ineffective assistance of counsel (IAC) at sentencing. He now appeals the denial of his petitions. We decline to address Schurz's two uncertified claims because we find that no reasonable jurist could disagree with the district court's resolution of them. 28 U.S.C. § 2253(c); 9th Cir. R. 22-1(e); *Slack* v. *McDaniel*, 529 U.S. 473, 484 (2000).

## II. DISCUSSION

Schurz filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996. Normally, this would require us to apply a highly deferential standard of review to the last reasoned state court decision. *See* 28 U.S.C. § 2254(d); *see also Ylst* v. *Nunnemaker*, 501 U.S. 797, 803–04 (1991). However, Schurz argues that he's entitled to de novo review because the state court denied one of his PCRs on procedural grounds. While we're inclined to disagree, we needn't resolve this thorny procedural issue because Schurz's IAC claim fails even under de novo review.

Schurz argues that his lawyer performed deficiently by failing to develop "abundant evidence of significant, humanizing mitigation information," which "undermine[d] confidence in" the outcome of his sentencing hearing. But, to be entitled to relief, Schurz must show not only that his sentencing "counsel's performance was deficient" but also that "the deficient performance prejudiced the defense." *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984).

**1.** Schurz claims that his sentencing attorney failed to present mitigating evidence about his drug abuse and dysfunctional family life. But the attorney extensively covered these topics in his sentencing memorandum, complete with an attached psychological evaluation. The evidence Schurz cites would have been cumulative, and so, "not . . . likely to have affected the outcome of the sentencing." *Leavitt* v. *Arave*, 646 F.3d 605, 615 (9th Cir. 2011); *see also Wong* v. *Belmontes*, 130 S. Ct. 383, 387 (2009) (per curiam).

The sentencing memorandum described Schurz as the "classic picture of a young boy who was the product of a dysfunctional family . . . [and who] grew up in an environment of alcoholism." The home where he lived was shared by "[t]hree families with a total of 10 children," a sign of the poverty his family suffered. The psychological evaluation elaborated on Schurz's utter lack of emotional connection with either parent—he was abandoned early on by his father, and the only attention he got from his mother was when she beat him. "The only person [Schurz] ever really had was [his] grandmother." He was "deeply disturb[ed]" when she died early in his life; it was then that he "start[ed] getting into trouble" and first started taking heroin. He was sent to rehabilitation that same year and after experimenting with "just about every drug that is illegally available," became an alcoholic and a heroin addict. The evaluation concluded with a lengthy discussion of Schurz's many psychological problems.

We fail to see what the evidence Schurz discusses in his briefs would have added to this already bleak picture. Indeed, most of the new evidence is cumulative and minimally significant. The non-cumulative pieces of evidence include allegations of sexual abuse, cerebral dysfunction and fetal alcohol syndrome but are unsubstantiated by Schurz.

**2.** Most of the remaining evidence Schurz presents is so speculative that it comes nowhere close to showing deficient performance, much less prejudice. *See, e.g.*, *Gonzalez* v. *Knowles*, 515 F.3d 1006, 1015–16 (9th Cir. 2008); *Wildman* v. *Johnson*, 261 F.3d 832, 839 (9th Cir. 2001). Schurz claims that his "fetal development likely suffered" because his mother drank while pregnant with him, that his family members had "undiagnosed mental illness[es]," that he has a

"genetic predisposition" to substance addiction and that he was "likely sexually abused by a priest." While Schurz relies on such tentative statements from family members, he presents no medical reports or even a declaration from Schurz himself. What is perhaps his strongest piece of evidence, a report from the time he spent at a drug treatment center as a child, only goes so far as to suggest he may have "possible cerebral dysfunction." There's nothing to suggest that this is, in fact, the case or how this could have been used to mitigate Schurz's punishment.

**3.** The remaining evidence is minimally relevant at best. Though Schurz points to evidence of some head trauma six or seven months before his arrest, the doctor who made the finding also expressly found that it "has nothing to do with his present competency." Schurz advances a litany of childhood woes—his parents' romantic involvement as minors, an "acute psychotic break" he suffered from using a hallucinogenic drug, teasing by siblings and classmates, various childhood maladies and possible exposure to neurotoxins from pesticides used in his home town. But he hasn't explained why these factors deserve more than de minimis weight in assessing his punishment as an adult. Nor do we see how the facts that his mother and father are cousins, that he holds "sincere beliefs" in his native religion and that there was a culture of alcohol abuse and widespread criminal activity on his reservation could have made any difference in the sentencing decision.

\*      \*      \*

"To assess prejudice, we consider the mitigating evidence that was presented along with the new mitigating evidence and reweigh all of it against the aggravating evidence to

determine whether there is a 'reasonable probability' that it would have produced a different verdict." *Samayoa* v. *Ayers*, 649 F.3d 919, 928 (9th Cir. 2011); *see also Porter* v. *McCollum*, 130 S. Ct. 447, 452 (2009). Here, the sentencing judge found a single aggravating factor, but it was an exceedingly powerful one: Schurz committed a particularly heinous murder—lighting a defenseless, trapped man on fire—in response to a minimal provocation occasioned by a few words of bravado that were not even directed at him. As the Arizona Supreme Court observed:

> The cold-blooded burning to death of a person who is attempting to flee demonstrates the kind of "vile" mind-set that we have labeled heinous or depraved. The suffering—both mental and physical—of a person who remains conscious while receiving third and fourth degree burns over almost 100% of his body more than adequately demonstrates cruelty.

*State* v. *Schurz*, 859 P.2d 156, 166 (Ariz. 1993).

The new mitigating evidence Schurz presents isn't "reasonably likely" to have made an impact at sentencing. *See Strickland*, 466 U.S. at 693. We are particularly confident in so concluding in light of the fact that the judge who sentenced Schurz already reviewed much of the "new" evidence through the state post-conviction process, and found it insufficient to change the sentence from death.

**AFFIRMED.**