NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

CRAIG DWAYNE JUSTICE,
*Appellant*.

No. 1 CA-CR 13-0904
FILED 7-23-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-118843-001
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Louise Stark
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Kent E. Cattani joined.

---

**O R O Z C O**, Judge:

¶1         Craig Dwayne Justice (Defendant) timely appeals from his convictions for second degree murder and leaving the scene of a fatal injury accident.  Defendant argues on appeal that the trial court erred when it permitted the State to present evidence that he was on parole at the time of the collision in support of the charge of leaving the scene of the accident.  He also argues the trial court should have sua sponte given a limiting instruction.  For reasons set forth below, we find no abuse of discretion and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         On the morning of the collision, Defendant and his wife were driving home from a party at a friend's house at which Defendant had been drinking.  On the drive home, Defendant was involved in a traffic altercation with two men in a pickup truck.  Darrin, the driver of the truck, admitted that he had also been drinking.  According to Darrin, he and Defendant got out of their vehicles and argued in the street, then Defendant hit him in the mouth and fractured his jaw before driving off in Darrin's truck, leaving Darrin and his friend at the scene.  Defendant was driving the truck when, minutes later, he ran a stop sign approximately half a mile away and hit an SUV, killing the driver.

¶3         A witness who lived near the intersection heard the crash and immediately called 911. She saw "two people in front of the truck leaving." The witness asked the man and woman, if anyone was hurt, but they did not respond.  The witness also saw a white car "on the other side," facing in the opposite direction of the pickup truck, and saw a "blonde woman" getting the man into the back passenger door of the car before the woman "went round to the driver's side" and "accelerated" away.  The man appeared to have some difficulty in getting into the car, and the witness heard the woman telling the man to get in.  The car drove off while the passenger door was still open. As the car went down the street, the witness saw the woman turn her right blinker on "like she was going to take a right

turn," but then the woman turned her lights off and turned left. The woman also did not stop at a stop sign, just went through it. The car was headed in the direction of the trailer complex in which Defendant lived at the time. All this time, the witness was on the telephone with 911, describing events and relaying the license plate number of the white car.

**¶4** Based on the 911 call, police broadcasted a description of a white Lincoln that had been seen leaving the scene as well as a description of its occupants. Shortly thereafter, police received a report that a "hit-and-run" victim had arrived at a nearby hospital. A Maricopa County Sheriff's deputy drove to the hospital and located the white Lincoln parked in the parking lot. He also found Defendant, who was being treated for several injuries including a "large 5 centimeter long, mildly displaced and comminuted right mid-femoral shaft fracture" and a "curvilinear laceration on the right forehead." Defendant gave the deputy several versions of events. He first stated that he had stopped to render assistance to the two men in the truck but that a "racial misunderstanding" occurred and that they proceeded to hit him and he fought back. He also told the deputy that he had hit both of them and gotten into their truck because his wife had left him and driven off in their white car. He then stated that someone pulled him out of the pickup truck and ran him over with it. However, when the deputy explained that the truck was found half a mile from the location of the initial altercation, Defendant denied driving the truck. Defendant's Blood Alcohol Content was between .146 and .174 percent within two hours of driving.

**¶5** Defendant did not testify at trial, but his wife testified and maintained that they had been the subject of an attempted car-jacking by the men in the pickup truck and that Defendant sustained his injuries when he was run over by them. She maintained that she never saw the SUV and was unaware of any collision. She testified that the only reason they left the location where the woman was on the telephone was to take Defendant to the hospital because he needed immediate medical attention.

I.      Motion in Limine re Other Act Evidence

**¶6** Several months before trial, the State moved *in limine* to preclude Defendant from raising a necessity defense by arguing that he left the accident scene to obtain medical assistance. The State also filed a motion *in limine* to introduce evidence that Defendant was on parole at the time of the offenses, "should the Defendant choose to testify" and claim that he left the scene to obtain medical treatment. At a motions hearing, defense counsel agreed that Defendant would not raise a necessity defense. The

State agreed that defense counsel could introduce evidence of Defendant's injuries in connection with his theory that Defendant was not driving the truck. In light of defense counsel's concession regarding the necessity defense, the State also agreed that it would not introduce evidence that Defendant was on parole at the time of the collision. However, the State announced its intention to introduce that evidence in rebuttal if Defendant suggested "some issue or some reason for leaving the scene." Defense counsel objected to the motion on the grounds that it was "not timely" and because the evidence was barred by the injunction against discussing penalties at trial. The trial court deferred ruling on the State's motion "based on the State's agreement" that it would not raise the issue of parole in its case in chief or in opening statements. The court also advised defense counsel that he was on notice of the State's intentions if Defendant wished to brief any issues.

¶7 During cross-examination of a sheriff's deputy, defense counsel attempted to elicit statements that were made by Defendant's wife to the deputy who spoke with her at the hospital while Defendant was being treated. Counsel argued wife's statements were admissible as "excited utterances" or present sense impressions. The State made a hearsay objection to the line of questioning and argued that Defendant could call Defendant's wife to testify as a witness. The State argued that,

> [I[f the defense is going to attempt to get out some sort of medical necessity through [Defendant's wife], I am renewing that I would like to be able to get into an alternate theory as to why they left, if that's what is going to come out as to [Defendant's wife].

The trial court sustained the State's hearsay objections.

¶8 After the State rested and the trial court denied Defendant's Rule 20 motion, defense counsel announced that it would call Defendant's wife as a witness. The trial court asked the State to identify what in wife's testimony would "trigger the parole status being relevant[.]" The State responded that Defendant's parole status was relevant "from the get go" because it was the reason Defendant left the scene. The fact that Defendant had been drinking in violation of his parole and was involved in a fatal traffic accident, in a truck that did not belong to him, made both Defendant and his wife realize that Defendant needed to leave the scene. Thus, according to the State, any attempt by the wife to say that Defendant was "so badly injured" they needed to "seek immediate medical attention" would open the door. Defense counsel objected, arguing that "it was

4

inherently prejudicial to start arguing penalties," there was ample evidence that Defendant's injuries required medical attention, the State was simply "trying to impute sinister motives" to Defendant and his wife's actions without any supporting proof, and the evidence was "inherently prejudicial under 403." The trial court ruled that the evidence was admissible and Defendant could ask for a limiting instruction. Defense counsel never asked for a limiting instruction.

¶9 Defendant's wife testified that she alone was driving the white Lincoln because Defendant did not have a driver's license and "he had been drinking alcohol." She maintained that Defendant had been run over by the men in the pickup truck and that she drove him from the scene to the hospital because Defendant was so badly injured that she thought he was "going to bleed to death." In an attempt to "[draw] the sting," the following exchange occurred:

> [Defense Counsel]: Okay. And from there in this whole process, an argument is being posited that maybe you were deliberately trying to get [Defendant] away from the accident because he was on parole at the time?
>
> [Wife]: Didn't even cross my mind.

During cross-examination, the following exchange occurred:

> [Prosecutor]: Well, [defense counsel] asked you the question that [Defendant] was on parole and you answered yes, he was?
>
> [Wife]: Well, then I did.
>
> [Prosecutor]: Okay. So is that a possible reason . . .
>
> [Wife]: [Y]ou're getting me all confused and you're trying to put words into my mouth. I was scared for my husband's life. I picked him up. I put him in the car.

¶10 The State did not further pursue this line of questioning with Defendant's wife. However, during the State's rebuttal, it called a parole supervisor from the Arizona Department of Corrections who testified that, at the time of the collision, Defendant was on parole from a felony committed in Georgia. The witness also testified that among the terms and conditions of Defendant's parole were the conditions to "not consume or use any form of alcohol . . . to obey all city, county and state laws . . . and . .

. inform [his] parole officer within one working day of any contact . . . with any law enforcement officer . . . [and] not engage[] in any assaultive, violent or criminal behaviors or activities of any sort."

**¶11** Following this witness's testimony, the jury submitted two questions asking why Defendant was on parole. The parties agreed and the jury was instructed that the reason Defendant was on parole was not relevant and not something with which the jury need be concerned.

**¶12** Defendant did not request a limiting instruction either that day or when final instructions were agreed upon later in the day. The trial court consequently did not give a limiting instruction regarding Defendant's parole status.

**¶13** In closing arguments, the State argued that the evidence established that Defendant was the driver of the pickup truck and that he left the scene of the accident when he could simply have stayed there and called or waited for medical assistance. During rebuttal closing, the State argued that the fact that Defendant was on parole gave him the "motive to flee." According to the State, because of his parole status, Defendant knew he was in "a world of trouble" if the police arrived, so they drove away without even waiting for the car doors to close. In response to specific comments by defense counsel in closing, the State argued:

> Now, the defense has argued that consuming liquor, the parole officer testified that in response to a question only about the alcohol, that it was a minor violation, probably wouldn't have done much. But there's a lot more that's going on here. One, he's driving a vehicle that doesn't belong to him without the permission of the owner. Two, he's committed at least two traffic violations: Speeding - - in fact, criminal speeding; and running a stop sign. Three, he's caused a collision. And four, at a minimum, he's injured somebody. At the most, he's killed somebody. But he doesn't know either one of those because he didn't stop to check to see whether anybody is injured. . . . What he did is he got up, he went to the vehicle, got in it, and they fled going home. At any point he could have called 911.

The jury subsequently found Defendant guilty of second degree murder and leaving the scene of a fatal injury accident as charged. Defendant timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of

the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031 and -4033.A.1 (West 2015).[1]

## DISCUSSION

II.     Admission of felony parole status

**¶14**          On appeal, Defendant argues that the "litany" of violations he committed by "taking the truck, driving drunk without a license, running the stop sign and knowing the accident was serious" was sufficient "motive" to show a guilty mind.  Defendant argues that, while the State may have claimed his felony parole status was relevant to show motive, it actually used it as character evidence to impeach his and his wife's testimony and as "substantive evidence" to convince jurors that it had proven the charges.  Contrary to Defendant's contentions, our review reveals that the State did not use the evidence for an improper purpose.

**¶15**          We review a trial court's admission of evidence for an abuse of discretion.  *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).  "Absent a clear abuse of discretion, this court will not second-guess a trial court's ruling on the admissibility or relevance of evidence."  *State v. Spreitz*, 190 Ariz. 129, 146 (1997) (internal punctuation omitted).

**¶16**          Four provisions of the Arizona Rules of Evidence control the admission of other act evidence: Rule 404(b) requires that the evidence be admitted for a proper purpose; Rule 402 requires that the evidence be relevant; Rule 403 requires that the danger of unfair prejudice not outweigh the probative value; and Rule 105 requires that the trial court give a limiting instruction upon request.  *State v. Terrazas*, 189 Ariz. 580, 583 (1997).  While Rule 404(b) prohibits the introduction of other act evidence "to prove the character of a person in order to show action in conformity therewith," it permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."  Thus evidence of other acts is admissible if it is relevant and admitted for one of the proper purposes.  *State v. Beasley*, 205 Ariz. 334, 337, ¶ 14 (App. 2003) (citation omitted).  "Evidence is relevant if[] (a) it has any tendency to make a fact more or less probable than it would be without the evidence[] and (b) the fact is of consequence in determining the action."  Ariz. R. Evid. 401.

---

[1]     We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

**¶17** Here, the State sought to introduce evidence of Defendant's parole status to impeach his wife's testimony that the only reason they left the scene was to get Defendant medical assistance as quickly as possible. The State argued Defendant's parole status gave him and his wife a motive to flee the scene before police arrived. Thus, rather than simply waiting for emergency medical assistance to arrive, the two drove away taking evasive action in order to avoid being caught in violation of his parole because of his drinking and driving and having caused the collision.[2] The trial court agreed that the evidence was admissible for this purpose, noting that "being on parole would be a very good reason to leave the scene or strong motive to leave the scene." The evidence was clearly relevant to explain Defendant's reason for leaving the scene and introduced for the proper purpose of proving Defendant's motive for doing so. Furthermore, it became even more relevant in light of his wife's denial that any collision had occurred and her explanation that they left the scene simply to seek medical assistance. *See, e.g., Beasley*, 205 Ariz. at 337, ¶¶ 13-14 (defendant's statements that he fled because he had been mistakenly released from jail and did not want to return were admissible under Rule 404(b) to prove motive for fleeing); *State v. Rivers*, 190 Ariz. 56, 60-61 (App. 1997) (evidence that defendant failed drug test properly admitted to establish motive for defendant to escape from custody). The trial court did not abuse its discretion in admitting evidence of defendant's parole status as relevant to establish his motive for leaving the scene of the collision.[3]

---

[2] Defendant's wife admitted that she heard the witness at the scene speaking with someone on the telephone and relaying the license plate of their car, but that, because assistance did not come fast enough, she needed to take Defendant to the hospital herself. A question from the jury remarked upon the fact that Defendant's wife heard the woman speaking on the phone and asked why the wife decided to "move someone that is badly injured if [she] knew help was on the way." Defendant's wife replied that she did not hear the woman say 911, but only "heard her say my license plate and thanked her for calling and asked her to tell them we're going to the hospital."

[3] Defendant's argument that the State used the evidence as improper character evidence to show that Defendant "was a person who would drive drunk, cause a fatal accident and leave the scene based upon his being a felon on parole" is simply not borne out by the record. Defendant also suggests that the evidence was "superfluous" because the fact that he was drinking and driving gave him more than enough motive to flee. However,

**¶18** Defendant next argues that the evidence was unfairly prejudicial and should have been excluded on that basis. The trial court considered the issue and determined that the probative value of the evidence was not outweighed by a danger of prejudice. *See* Ariz. R. Evid. 403. We find no abuse of discretion in the trial court's determination.

**¶19** Any evidence that is relevant and material will generally be harmful to a defendant, but it is only when evidence is unfairly prejudicial that it need be excluded. *State v. Schurz*, 176 Ariz. 46, 52 (1993). "Unfair prejudice" is applied to describe evidence that has an undue tendency to suggest a decision on an improper basis such as emotion, sympathy or horror. *Id.* While the evidence of Defendant's parole status may have been "adversely" probative, in the sense that all relevant evidence generally is, it was not unfairly prejudicial in that it did not suggest a decision on an improper basis such as "emotion, sympathy or horror." *See id.* Certainly the State did not use it to that effect in its arguments to the jury. Furthermore, once counsel attempted to suggest that Defendant was not the driver of the pickup but rather a victim and to offer a medical emergency reason for failing to remain at the scene, the probative value of evidence of the alternative reason for leaving outweighed potential prejudice. In addition, the trial court took steps to mitigate any potential for prejudice from the knowledge that the parole was for a felony by instructing jurors, when they inquired, that the nature of the underlying felony was not something they either should consider or speculate about because it was not part of the case. Finding no indication in the record to the contrary, we presume the jury followed the trial court's instruction. *See State v. LeBlanc*, 186 Ariz. 437, 439 (1996) ("Jurors are presumed to follow instructions.").

III. Limiting Instruction

**¶20** Finally, Defendant argues that the trial court committed reversible error because it failed to give a limiting instruction regarding the parole status evidence. Rule 105 provides that a trial court shall give a limiting instruction when evidence is admissible for one purpose but not for another purpose "upon timely request." *See also Terrazas*, 189 Ariz. at 583 (Rule 105 requires that trial court give limiting instruction *upon request*) (emphasis added). Defendant concedes that he did not request a limiting instruction, but contends that the trial court had an "imperative duty" to

---

the fact that the State may have evidence of other motives does not preclude it from presenting evidence of any one motive even though less prejudicial evidence of motive may exist. *State v. Hargrave*, 225 Ariz. 1, 8-9, ¶ 14 (2010). Furthermore, Defendant does not cite any authority for his argument.

give a limiting instruction and that the court's failure to do so *sua sponte* resulted in fundamental error that requires reversal of his convictions. We disagree.

**¶21**     "Experienced defense counsel may very well consider it good trial strategy to fail to ask for such an instruction or to object to such an instruction if proposed." *State v. Hernandez*, 7 Ariz. App. 200, 205 (App. 1968), *abrogation on other grounds recognized by State v. Harvill*, 106 Ariz. 386, 391 (1970). Here the trial court expressly offered to give a limiting instruction when it ruled it would admit evidence of Defendant's parole status. Defense counsel made no request at that time nor when the final jury instructions were discussed and settled.

**¶22**     A trial court is not required, *sua sponte*, to give a limiting instruction on other act evidence. *State v. Miles*, 211 Ariz. 475, 483, ¶ 31 (App. 2005) (citing *State v. Taylor,* 127 Ariz. 527, 530 (1980)). Our supreme court has "repeatedly held that, if a defendant wants an instruction limiting the effect of certain evidence he must request it, and the failure of the trial court to so instruct is not error in the absence of a request therefor." *Taylor*, 127 Ariz. at 530.

**¶23**     "If a party fails to object to an error or omission in a jury instruction, we review only for fundamental error." *State v. Finch*, 202 Ariz. 410, 415, ¶ 19 (2002). To prevail on fundamental error review, a defendant "must establish both that fundamental error exists and that the error in his case caused him prejudice." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005). However, before we engage in fundamental error review, we must first find that the trial court committed some error. *State v. Lavers*, 168 Ariz. 376, 385 (1991). Contrary to Defendant's assertions, because the trial court here was not required to give a limiting instruction in the absence of a request by Defendant, Defendant has failed to prove that any error, let alone fundamental error, occurred in his case. *See also Taylor*, 127 Ariz. at 530, (without the request of counsel, this court will not find that trial court's failure to give limiting instruction deprived defendant of right essential to defense or of a fair trial).

**¶24** Defendant's reliance on *State v. Canedo*, 125 Ariz. 197 (1980) in support of his argument is misplaced. Unlike in the present case, in *Canedo* the defendant specifically requested a limiting instruction. *Id.* at 200. *Canedo* therefore is not dispositive in this case. *See also* Taylor, 127 Ariz. at 530. The trial court took no action that deprived Defendant of any essential right or of a fair trial. Had Defendant desired to lessen any potential danger of misuse of his parole status, he could have requested a limiting or cautionary instruction as the trial court invited him to do.

## CONCLUSION

**¶25** For the foregoing reasons, we affirm Defendant's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama